IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE:  PARKCENTRAL GLOBAL LITIGATION | CIVIL ACTION NO. 3:09–CV–0765–M (LEAD CASE) ECF |

### MOTION TO DISMISS ON BEHALF OF STEVEN L. BLASNIK AND PETER M. KARMIN

Timothy R. McCormick
William L. Banowsky
Michael W. Stockham

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
Telephone: 214.969.1700
Facsimile: 214.969.1750

ATTORNEYS FOR
STEVEN L. BLASNIK & PETER M. KARMIN

TABLE OF CONTENTS

PAGE

I. Introduction and Summary of Argument ................................................................1

II. Factual Background ..............................................................................................3

III. Pleading Standards ..............................................................................................6

IV. Arguments and Authorities .................................................................................8

    A.   Plaintiffs lack standing to sue Defendants on claims for mismanagement.  These are derivative claims owned by the Hub Fund or the Onshore Fund. ................................9

    B.   Plaintiffs failed to plead a viable and recognized breach-of-fiduciary-duty claim. .............10

       1.   Neither Blasnik nor Karmin owed fiduciary duties to the limited partners under the facts plead in the Amended Complaint. ..........................................................11

       2.   Contractual terms in the partnership agreements displaced general duty standards. ..............13

       3.   Plaintiffs failed to allege particularized facts demonstrating any breach of duty by Blasnik or Karmin. ..........................................................15

       4.   Plaintiffs fail to allege a legally plausible damage theory against Blasnik or Karmin. ..........................................................19

    C.   Plaintiffs' allegations also lack necessary Rule 9(b) factual detail. ....................................20

    D.   Plaintiffs' secondary and vicarious liability theories fail, as well. ......................................22

V. Conclusion ..........................................................................................................24

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a case brought as a breach-of-fiduciary-duty claim against Steven L. Blasnik and Peter M. Karmin, with secondary liability theories against others.  In what appears to be an intentional effort, Plaintiffs have designed a "puzzle pleading"[1] in an effort to mask their claims and hide the deficiencies of their case.  For example, Plaintiffs assert claims of "mismanagement" in ¶¶ 108 and 109, claims which are clearly derivative in nature and are not owned by these Plaintiffs.  Second, although framed as breach-of-fiduciary-duty claims, the remaining claims sound in fraud (¶ 109(a), (e), and (f)), and yet none of the claims of fraudulent conduct meets the pleading standards required of such claims to survive a motion to dismiss.

Plaintiffs do not allege, and do not assert, a claim of fraud in the inducement.  At times, their Amended Complaint reads as a derivative action, at times as a fraud claim, and at times as a breach-of-fiduciary-duty claim.  Although Plaintiffs have tried to obscure their claims, the Amended Complaint does not allege the necessary facts to establish any single cause of action.  Plaintiffs fail to state a claim against Blasnik and Karmin for four independent reasons:

<u>First</u>, Plaintiffs lack standing to assert the core allegations of mismanagement (<u>e.g.</u>, ¶ 108, 109).  These are classic derivative claims, and, as such, those claims belong to the limited partnership in which  Plaintiffs purchased units or the Hub Fund in which the limited partnership invested, and in which all trading occurred.  Regardless, they *do not belong* to Plaintiffs.  Although

---

[1]    Complex, long-winded complaints are "not an uncommon mask for an absence of detail." <u>Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 362 (5th Cir. 2004); <u>Williams v. WMX Techs., Inc.</u>, 112 F.3d 175, 178 (5th Cir. 1997).  This "puzzle pleading" burdens a court with convoluted pleadings that lack necessary dates and specifics, making it difficult to piece together a complete picture of the alleged culpable conduct.  They seek to avoid dismissal by deliberately creating a thicket for a court to navigate, hoping complexity can pretend to be specificity.  Nevertheless, courts routinely recognize and reject this tactic, dismissing such pleadings because, for all the twists and turns, they still fail to state a claim.  <u>See, e.g.</u>, <u>Goldstein v. MCI WorldCom</u>, 340 F.3d 238, 243 (5th Cir. 2003).

labeled as a breach of fiduciary duty, the alleged "misrepresentation" claims (¶ 109(b)-(f)), viewed in a light most favorable to Plaintiffs, do not satisfy the pleading requirements of Rules 8 and 9(b). They should be dismissed with prejudice.

Second, Plaintiffs sued two employees of a general partner, but they did not sue the general partner. Under controlling law, employees of a general partner do *not* have a fiduciary duty running to the limited partners *unless* Plaintiffs can plead specific facts demonstrating carefully limited exceptions to this rule.[2]  They do not do so here.

Third, the Subscription Agreements and partnership provisions define and limit the scope of any duties and the liability of the general partner (and its employees), as permitted under Delaware law. These contractual limits displace general fiduciary standards. Plaintiffs fail to plead facts that allow them to establish a claim that meets the contractual requirements.

Fourth, Plaintiffs fail to plead facts establishing a damage theory recognized under law. They fail to show how any specific act by Blasnik or Karmin proximately caused a direct injury. They also claim that, "had they known" certain information, they might have made different choices and reduced their losses. But, a theoretical decrease of market losses based on hindsight is too speculative under Texas law to state a claim for relief.

Ultimately, Plaintiffs fail to allege the facts necessary to state a claim for relief against Blasnik or Karmin. Accordingly, Blasnik and Karmin move to dismiss Plaintiffs' Amended

---

[2]    This narrow exception requires Plaintiffs to plead detailed facts demonstrating how (1) each individual specifically controlled the limited partnership assets, (2) beyond the scope of the limited partnership agreement, (3) to enrich himself personally, (4) at the expense of the limited partners. Plaintiffs fail to plead facts needed to use this narrow exception.

Complaint,[3] with prejudice, under Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b) because this is Plaintiffs' best effort at a second try.  See infra at 25-26.

## II.  FACTUAL BACKGROUND

Plaintiffs are three sophisticated, accredited investors under the guidance of their own investment advisors, who subscribed for interests in Parkcentral Global, L.P. ("Onshore Fund"). The Onshore Fund is a Delaware limited partnership and Plaintiffs are limited partners.  Each Plaintiff executed a Subscription Agreement (Joint App. D. App. 00001-00034)[4] and signed the Limited Partnership Agreement ("LP Agreement") (Joint App. D. App. 00035-00078).[5]  Before purchasing their limited partnership interest, each potential partner was furnished with a Private Placement Memorandum ("PPM"), which contained detailed information about, and associated risks of, becoming a limited partner (¶ 31).  Plaintiffs do not challenge any of the information provided in the PPM.  Indeed, they neither plead nor assert any claim for fraud in the inducement.

The Onshore Fund was part of a common structure in the hedge fund industry.  In addition to the Onshore Fund, a second fund existed for international investors:  Parkcentral Global Fund, Limited ("Offshore Fund").  Both of these funds invested their capital in a Bermuda company:  Parkcentral Global Hub Limited (the "Hub Fund").

Parkcentral Capital Management, L.P. ("Parkcentral Management"), a Texas limited partnership, served as the general partner for the Onshore Fund.  Parkcentral Management had a separate investment advisory agreement with the Hub Fund.  Plaintiffs allege that Defendant

---

[3]    Plaintiffs' Consolidated Class Action Complaint ("CCAC") is the second attempt to plead this claim properly.  Thus, Defendants refer to the CCAC as an Amended Complaint.  See infra at 26-27.

[4]    Blasnik and Karmin have filed a Joint Appendix with the Defendant Perot Entities.

[5]    For more detailed discussion of key terms in the operative documents.  See infra at 12-16.

Blasnik is the sole manager and President of Parkcentral Management.  (¶¶ 4–5).  They allege that Karmin is the head trader for the Hub Fund (Id. at 5), but Karmin was not an officer or a director of Parkcentral Management, the Onshore Fund, or the Hub Fund.[6]

The following diagram shows the relationship of the parties:



_____

[6]    The Amended Complaint alleges that Karmin was responsible for managing the risk in Hub Fund.  The PPM, cited in the Amended Complaint, reflects that this statement is not true.

All the "trading" alleged in the Amended Complaint actually occurred in the Hub Fund, not in the Onshore Fund in which Plaintiffs owned limited partnership interests.  Changes in value from the Hub Fund's investment activity led to changes in value of the Onshore Fund's investment in the Hub Fund.  In turn, this increased or decreased the overall value of the Onshore Fund.

During the autumn of 2008, in the wake of the bankruptcy of Lehman Brothers and the unprecedented chaos in the financial markets, the Hub Fund suffered large losses.  These grew in October and accelerated further during the middle of November, ultimately resulting in the failure of the fund.[7]  Because the value of the Onshore Fund's investment in the Hub Fund went to zero, Plaintiffs' limited partnership interests in the Onshore Fund became worthless.  After their loss, *Plaintiffs did not sue any of the entities involved with their investment:*  not the Onshore Fund, the fund they purchased limited partnership interests in; not the Hub Fund, which bought and sold the securities that resulted in the losses; not even the investment advisor to the Hub Fund, Parkcentral Management.  Instead, Plaintiffs sued two employees[8] of Parkcentral Management and several Perot family entities that had nothing to do with the investment management of the Onshore Fund or the Hub Fund.

Plaintiffs' fundamental claim against Blasnik and Karmin is for breach of fiduciary duty (Count I), framed as "mismanagement" (See ¶ 108) or as a "fraud" claim (See ¶ 109).  None of the claims can survive the requirements of Rules 8, 9 and 12.

---

[7]     On November 27, 2008, at the request of the directors of the Hub Fund, the Bermuda courts appointed liquidators for the Hub Fund.

[8]     Count II asserts that Karmin "assisted" in the breach of duty (¶¶ 117-18).  Count III alleges all defendants are liable for the acts of each other under various theories, but all are predicated on the breach of fiduciary theory in Count 1.

### III.  PLEADING STANDARDS

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Supreme Court precedent also now requires that a plaintiff's factual allegations be detailed enough to show a right to relief that is *plausible and above mere speculation.*  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 556 (2007).  A plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u>  A court should not accept legal conclusions in the complaint as true.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___; 129 S. Ct. 1937, 1950 & 1953 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [also] do not suffice."  <u>Id.</u> at 1949.  Conclusory statements include factual inferences that fail to provide the underlying facts on which they are based.  <u>In re Coca-Cola Enters., Inc.</u>, C.A. No. 1927-CG, 2007 WL 3122370, at *2 (Del. Ch. Oct. 17, 2007) <u>aff'd sub nom.</u> <u>Int'l Bd. Of Teamsters v. The Coca-Cola Co.</u>, 954 A.2d 910 (Del. 2008).  Overall, under Rule 8's standard, "only a complaint that states a *plausible* claim for relief survives a motion to dismiss."  <u>Id.</u> at 1950.  "And [w]here the facts do not permit a court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief."  <u>McCall v. Sw. Airlines Co.</u>, No. 3:08-cv-2000-M, 2009 WL 3163544, at *4 (N.D. Tex. Oct. 1, 2009).

Therefore, conclusory, speculative, inaccurate, or legally impossible allegations that a defendant had a duty, breached a duty, or acted with knowledge or intent, fail to satisfy Rule 8. This mimics the procedure for evaluating a complaint under Rule 12(b)(6), where courts need not accept as true a plaintiff's conclusory allegations, legal characterizations, unreasonable

inferences, or unwarranted deductions of fact. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).

Under Rule 9(b), a complaint must also state "with particularity" any "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While the sole substantive cause of action alleged against Blasnik and Karmin is breach of fiduciary duty, Rule 9(b)'s heightened pleading standard applies to breach-of-fiduciary-duty claims premised on fraud. See Tigue Inv. Co. v. Chase Bank of Tex., N.A., No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004) (noting that "[c]laims of breach of fiduciary duty are subject to Rule 9(b) when the alleged breach consists of fraudulent conduct"); see also Brown v. Bilek, No. H-09-2193, 2009 WL 2601615, at *2 (S.D. Tex. Aug. 20, 2009) (same); In re Elec. Systs. Corp. ERISA Litig., 305 F. Supp. 2d 658, 672 (E.D. Tex. 2005) (same); Borsellino v. Goldman Sachs, Inc., 477 F.3d 502, 508 (7th Cir. 2007) (noting Rule 9(b) applies to "averments" of fraud not just claims; thus, allegations that "sound in fraud" trigger Rule 9(b)). Further, courts will dismiss a plaintiff's complaint under Rule 9(b) when fraud is not the declared claim but where the facts underlying the claim are inextricably intertwined with inadequate allegations of fraud. Tigue Inv. Co., 2004 WL 3170789, at *3 (citing Patel v. Holiday Hospitality Franchising, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2002)); accord Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

The Fifth Circuit demands strict adherence to Rule 9(b). A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir. 2009) (quoting Williams, 112 F.3d at 177; Nathenson v. Zonagen, Inc., 267 F.3d 400, 412 (5th Cir. 2001)). Put simply, the Fifth Circuit requires a complaint to set forth specific facts showing "the who, what, when,

and where, and how" of the circumstances constituting the asserted fraudulent activity. <u>Goldstein v. MCI Worldcom</u>, 340 F.3d 238, 245 (5th Cir. 2003); <u>see also</u> <u>Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.</u>, 365 F.3d 353, 362 (5th Cir. 2004)(noting Rule 9(b) requires plaintiffs to describe a specific occasion where a particular person misrepresented the truth for purposes of manipulation).

Rules 8 and 9(b) prohibit "group pleading" or stating allegations generally as to a group of defendants, while failing to segregate the alleged wrongdoing of one from that of another. <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing <u>Atuahene v. City of Hartford</u>, 10 Fed. App'x 33, 34 (2d Cir. 2001); <u>Medina v. Bauer</u>, No. 02 Civ. 8837(DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (discussing group pleading under Rule 8)); <u>Southland</u>, 365 F.3d at 362 (discussing group pleading under Rule 9(b)); <u>see also</u> <u>Patel</u>, 172 F. Supp. 2d at 824 (same). The law mandates that plaintiffs "distinguish among those they sue and enlighten *each defendant* as to his or her particular part" in the alleged wrongful activity. <u>Southland</u>, 365 F.3d at 365 (emphasis added). Therefore, even otherwise sufficiently specific factual allegations (*e.g.*, showing a duty, or showing misrepresentations, or showing mismanagement) are insufficient under Rules 8 and 9(b) if alleged against "defendants" generally.

## IV. ARGUMENTS AND AUTHORITIES

Plaintiffs allege that the Defendants entered into trades using derivative contracts in the CMBS[9] market. Plaintiffs do not contend that the purchase of these contracts was a wrongful act. Plaintiffs do assert that the purchased contracts were not consistent with the Fund's trading

---

[9]   Commercial Mortgage Backed Securities

strategy (¶ 48).  In essence, the Complaint alleges that the trading strategies were riskier and more highly-leveraged than Plaintiffs believed were appropriate.

The sole substantive claim against Blasnik and Karmin is a breach-of-fiduciary-duty claim based upon two different types of conduct.  First, the Amended Complaint asserts that both Defendants mismanaged the Fund, which resulted in its ultimate loss (¶ 108) (although it is not clear which "Fund" was allegedly mismanaged).  Second, Plaintiffs also allege that the Defendants misrepresented various aspects of the trading strategies actually employed by the Defendants and that, as a result of such misrepresentations, Plaintiffs suffered damages.  As discussed below, the claims for mismanagement, whether cast as fiduciary duty or otherwise, are derivative claims which can be brought only by and on behalf of the appropriate enterprise which owns the claims, not the individual Plaintiffs.  On the other hand, if Plaintiffs' Amended Complaint is truly a "misrepresentation" claim (whether labeled as fiduciary duty or not), it must meet the rigorous pleading standards of Rules 8 and 9.  Because the Amended Complaint does not meet these standards, the claim should be dismissed with prejudice.

> **A.**    **Plaintiffs lack standing to sue Defendants on claims for mismanagement.  These are derivative claims owned by the Hub Fund or the Onshore Fund.**

Plaintiffs lack standing to proceed with their claims of mismanagement against Defendants (¶¶ 108, 109(a), and (g)).  At its core, Plaintiffs' Amended Complaint alleges mismanagement of the Hub Fund and a subsequent demise of the value of the Onshore Fund.  (See, e.g., ¶¶ 1, 16, & 42).  This is a classic derivative claim in which the Hub Fund or the Onshore Fund suffered the alleged injury generally, not any single limited partner individually.  See, e.g., Albert v. Alex Brown Mgmt. Servs., No. Civ. A. 762-N, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005) (holding that claims for gross negligence and failure to provide

competent and active management are "clearly derivative"); <u>Kirtley Thornton v. Bernard Techs., Inc.</u>, No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009) (holding that mismanagement claims are derivative and that any recovery would be for the benefit of the corporate entity); <u>Litman v. Prudential-Bache Props.</u>, 611 A.2d 12, 15-16 (Del. Ch. 1992) (holding that allegations of bad investments by limited partners against general partners were derivative claims; the alleged injuries were to the partnership and not direct to the limited partners, even though the alleged breach resulted in diminished income to the limited partners). As a result, the Hub Fund or the Onshore Fund owns the claim and is the only party that has standing to sue on these claims.  Plaintiffs do not.[10]

### B.   Plaintiffs failed to plead a viable and recognized breach-of-fiduciary-duty claim.

To prevail on a breach-of-fiduciary-duty claim, a plaintiff must *plead* and prove the following elements:  (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach directly resulted in either an injury to the plaintiff or a benefit to the defendant.  <u>Cargill, Inc. v. JWH Special Circumstances LLC</u>, 959 A.2d 1096, 1125 (Del. Ch. 2008).  The Amended Complaint fails to meet the Rule 8 and 9(b) threshold to properly plead with particularity *any* of the elements of a breach-of-fiduciary-duty claim against Blasnik or Karmin.  Said another way, no well-plead facts exist in the Amended Complaint that could support any element of a breach-of-fiduciary-duty claim against Blasnik or Karmin.  Accordingly, this Court should dismiss the Amended Complaint, with prejudice.

---

[10]   Plaintiffs also failed to comply with a derivative complaint's procedural requirements such as filing a verified pleading stating shareholder status, lack of collusion, and, with particularity, their effort to obtain action by the board of directors or the reasons for not obtaining such action.  Fed. R. Civ. P. 23.1. This failure, too, requires dismissal.

### 1. Neither Blasnik nor Karmin owed fiduciary duties to the limited partners under the facts plead in the Amended Complaint.

This case deals with duties in a Delaware limited partnership. Plaintiffs were limited partners. Generally, a fiduciary relationship exists only between the general partner and the limited partners, and that duty can be limited by contract. Gotham Partners L.P. v. Hallwood Realty Partners, L.P., No. 15754, 2000 WL 1476663, at *20 (Del. Ch. Sept. 27, 2000); Maywalt v. Parker & Parsley Petroleum Co., 808 F. Supp. 1037, 1059 (S.D.N.Y. 1992) (citing Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex. App.—Austin 1980, writ ref'd n.r.e.)); contra Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 817 A.2d 160, 170-72 (Del. 2002), abrogated by 6 Del. Code Ann. § 17-1101. Under Delaware law, a general partner can delegate power to manage and control the day-to-day business of a limited partnership to agents, officers, and employees. 6 Del. C. § 17–403(c). But the law does not impute to them all the duties and liabilities of a general partner. Id. Said another way, employees of a general partner do not, by default, become fiduciaries to the limited partners simply because they manage the day-to-day operations of the partnership. Id.

Delaware law, by statute, protects employees of a general partner from accruing liabilities of the general partner simply because of their position. 6 Del. Code § 17–403(c). There is a limited exception to the general rule. To advance a claim for breach of fiduciary duty against individuals other than the general partner, Plaintiffs must allege facts that demonstrate (1) how each individual specifically controlled the limited partnership assets, (2) beyond the scope of the limited partnership agreement(s), (3) to enrich himself personally, (4) at the direct expense of the limited partners. See, e.g., In re USACafes, L.P. Litig., 600 A.2d 43, 48-49 (Del. Ch. 1991); Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 795 A.2d 1, 34 (Del. Ch. 2001).

Fiduciary relationships are special relationships and are not created lightly.  Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 872 A.2d 611, 624–25 (Del. Ch. 2005) rev'd in part on other grounds, 901 A.2d 106 (Del. 2006).  Thus, this is a limited exception, and not the norm.

The *only* paragraph in the Amended Complaint that attempts to provide any basis for the alleged fiduciary duty is paragraph 108: [11]

> "Plaintiffs entrusted their capital to defendants in exchange for substantial fees.  Defendants therefore assumed, and owed to plaintiffs, the following fiduciary duties …."

These conclusory allegations are not sufficient.  First, the *factual* assertion in ¶ 108 that Plaintiffs "entrusted their capital to" defendants is flatly contradicted by ¶¶ 5–7 of the Amended Complaint and by the legal documents cited in the Amended Complaint.  (Joint App. D. App. 00003).  Plaintiffs allege in ¶¶ 5-7 and these documents confirm that Plaintiffs in fact "entrusted their capital to" the Onshore  Fund and fees were paid to Parkcentral Management, none of which is a defendant. (Id.).  When a written instrument contradicts allegations in a complaint to which it is attached or in which it is referenced, the language of the instrument trumps the allegations.  United States v. St. Luke's Episcopal Hosp., 355 F.3d 370, 377 (5th Cir. 2004); Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206-07 (5th Cir. 1975). Second, Plaintiffs' conclusory statements fail to establish the narrow exception required under Delaware law.  For example, nowhere in the Amended Complaint is there any allegation of self dealing.  Accordingly, Plaintiffs' Amended Complaint should be dismissed with prejudice.  See, e.g., H.M. Wexford LLC v. Encorp, Inc., 832 A.2d 129, 147-48 (Del. Ch. 2003) (granting

---

[11]    The only other mentions of fiduciary duty in the narrative portion of the Amended Complaint are a general reference in paragraph 1 and an allegation of common questions of fact and law for class action purposes in paragraph 101.  (¶¶ 1 & 101).

defendant's motion to dismiss because plaintiff failed to sufficiently plead that defendant exercised its control of the partnership to benefit itself).

> **2.  Contractual terms in the partnership agreements displaced general duty standards.**

To the extent any duty exists, that duty (and any corresponding liability) was limited in the LP Agreement.  The Delaware Limited Partnership Act (6 Del. Code §§ 17–100 et seq.) provides parties with the maximum level of contracting freedom.  6 Del. Code § 17-1101(c); Elf Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286, 290 (Del. 1999); Active Assets Recovery, Inc. v. Real Estate Asset Recovery Services, Inc., No. 15478, 1999 WL 743479, at *5 (Del. Ch. Sept. 10, 1999); see also Myron T. Steele, Judicial Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies, 32 Del. J. Corp. L. 1, 3 (2007) (partnership agreement terms, not status, determine duties).   This includes the ability to modify fiduciary duties through contract.  R.S.M., Inc. v. Alliance Capital Mgmt. Holdings L.P., 790 A.2d 478, 497 (Del. Ch. 2001); In re Cencom Cable Income Partners LP Litig., No. 14634, 1996 WL 74726, at *4 (Del. Ch. Feb. 15, 1996).  Section 17–1101 states:

> § 17–1101. Construction and application of chapter and partnership agreement . . . .
>
> (d) To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership . . ., the partner's or other person's duties may be **expanded or restricted or eliminated by provisions in the partnership agreement**; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing.
>
> * * *
>
> (f) A partnership agreement may provide for the **limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties)** of a partner or other person . . .; provided, that a partnership agreement may not limit or

> eliminate liability for any act or omission that constitutes a bad
> faith violation of the implied contractual covenant of good faith
> and fair dealing. (emphasis added).

If the limited partnership agreement speaks to the standard governing a general partner's conduct, it displaces the default fiduciary duty rules. <u>Interactive Corp. v. Vivendi Universal, S.A.</u>, No. 20260, 2004 WL 1572932, at *1 (Del. Ch. July 2, 2004); <u>Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.</u>, 2000 WL 1476663, at *10 (Del. Ch. Aug. 30, 2000); <u>In re Cencom</u>, 1996 WL 74726, at *5.

In this case, multiple contract terms from the PPM, the LP Agreement, and the investors' Subscription Agreements address the standards governing the general partner and its employees' conduct, supplanting the default fiduciary duty rules.

<u>First</u>, the LP Agreement grants Parkcentral Management unlimited discretion to choose and manage investments for the Onshore Fund.  (Joint App. D. App. 00043-00046).

<u>Second</u>, the LP Agreement directly limits the liability of the General Partner, that is Parkcentral Management and its employees.[12]  More specifically, it provides:

> 10.1.   Exculpation:
>
> (a)      Notwithstanding anything to the contrary set forth in this Agreement, to the extent that, at law or in equity, any General Partner Party has duties (including fiduciary duties) and liabilities relating thereto to the Partnership or any Partner, **such General Partner Party shall not be liable for monetary or other damages to the Partnership or such Partner … for losses sustained or liabilities incurred by the Partnership or such Partner as a result of:  (i) errors in judgment on the part of such General Partner Party, or of any act or omission of such General Partner Party, if such General Partner Party acted without fraud, bad faith,**

---

[12]     Under the LP Agreement, "General Partner Party" means "the General Partner, any Affiliate of the General Partner and any member, partner, shareholder, director, officer, employee or agent of the General Partner or any such affiliate." (Joint App. D. App. 00040).  This includes Defendants Blasnik and Karmin.

**gross negligence or willful misconduct;"** (Joint App. D. App. 00066-00067) (emphasis added).[13]

\* \* \*

3.1.     Rights, Powers and Authority of the General Partner:

(e)     The General Partner shall not have any personal liability for the repayment to any Limited Partner, of any Capital Contribution by such Limited Partner.  (Joint App. D. App. 00046).

In light of Delaware law and this contractual framework, the Amended Complaint must demonstrate that the complained of activity exceeded the authority authorized by the LP Agreement, the discretion afforded the general partner, and then that Blasnik or Karmin breached a legally-recognized duty owed directly to the limited partners, subject to the standards in the LP Agreement.  Plaintiffs ignored Delaware law and the Subscription and LP Agreements, all of which negate the existence of any liability beyond the contractual limits in these agreements.

> **3.     Plaintiffs failed to allege particularized facts demonstrating any breach of duty by Blasnik or Karmin.**

Plaintiffs must plead particularized facts showing that Blasnik or Karmin's conduct was not a mere error in judgment, but instead was committed willfully, with gross negligence, or was fraudulent — an intentional tort directly against a limited partner.  Not only do Plaintiffs fail to plead a viable, legally-recognized duty, but they also fail to plead the facts necessary to establish a breach of any duty.  First, the mismanagement claims are not owned by these Plaintiffs and cannot be asserted by them.  The remaining claims sound in fraud.  Therefore, Plaintiffs must satisfy Rule 9(b)'s detailed requirements.  See supra at 8-9.  Plaintiffs fail to provide specific facts related to (1) who committed each alleged breach; (2) what each one did as part of the alleged

---

[13]     An almost identical provision appears at Page 12 of the PPM.  (Joint App. D. App. 00096).

breach; (3) where these alleged actions occurred; (4) when they occurred; and (5) how they would amount to a breach.  Such omissions are fatal under Rule 8 and Rule 9(b) because they do not particularize the circumstances of their claim, and they do *not* enlighten Blasnik or Karmin about particular acts that Plaintiffs allege are actionable as to each one.

Plaintiffs' fraud-as-breach-of-fiduciary-duty claim is built on a foundation of three allegedly false statements:  (1) the size of the CMBS position; (2) the CMBS position was hedged; and (3) the positions were not materially leveraged.  Plaintiffs do not attempt to allege any facts supporting their conclusory allegation that these statements were, in fact, false.  First, Plaintiffs quote extensively from "due diligence" documents (¶¶ 35–39) that predate any of Plaintiffs' investments, and yet each Plaintiff specifically disclaimed relying on such documents in the Subscription Agreements.  Plaintiffs were not limited partners at the time those "due diligence" documents were generated, and thus they cannot form the basis of a breach-of fiduciary duty claim.  See, e.g., Leung v. Schuler, No. 17089, 2000 WL 264328, at *6 (Del. Ch. Feb. 29, 2000); Sanders v. Devine, No. Civ. A. 14679, 1997 WL  599539, at *5 (Del. Ch. Sept. 24, 1997).  Next, they point to "opinions" in ¶¶ 48–71.  Plaintiffs cannot satisfy their obligation to plead specific facts by substituting opinions for facts.  For example, in Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278, 285–86 (5th Cir. 2006), the Fifth Circuit held that a district court did not abuse its discretion in refusing to consider opinions/conclusions in an expert affidavit attached to the plaintiffs' complaint to satisfy the particularity requirements of Rule 9.  Allowing Plaintiffs to rely on an expert's opinion to state a claim would entangle the Court in evidentiary issues that cannot be resolved at the pleading stage, including ruling on expert qualifications.  Id.

Plaintiffs have attempted to rely upon "opinions" rather than factual allegations  in the Amended Complaint.  For example, ¶¶ 48–71 refer to and rest upon the "extensive analysis" of

Fund information by "Plaintiffs."  In ¶¶ 49–50, Plaintiffs embedded graphics *they created* as a result of *their "analysis"* and attempt to advance these opinions and conclusions as a substitute for their requirement to allege facts.  And in ¶ 68, Plaintiffs advance unidentified "sensitivity analyses" as "fact."  These opinions/conclusions are even more unreliable than those rejected by the court in <u>Financial Acquisition Partners</u>.  The person performing the analysis is not identified.  The person's qualifications are not set forth.  And the method used for the "analysis" is not explained.  The opinions are nothing more than self-serving conclusions and should be rejected.  As a result, the Amended Complaint allegations relating to "misrepresentation" fail to meet Rule 8 and Rule 9(b) standards, because no facts support the legal theory Plaintiffs have advanced.  With these impermissible opinions and conclusions removed from the Amended Complaint, Plaintiffs' allegations of falsity become too general to satisfy the applicable pleadings standards.

Claims of willful misconduct, gross negligence, and fraud require Plaintiffs to plead each individual's specific state of mind.[14]  Plaintiffs must allege facts demonstrating that Defendants acted knowingly or intentionally to injure Plaintiffs.  <u>Southland</u>, 365 F.3d at 366–67.  That is, to avoid the legally binding exculpation provisions in the LP Agreement, they must plead scienter.

---

[14]     Under Delaware law, "willful misconduct" has been defined as a "conscious indifference" or an "I don't care attitude which is the prerequisite of wanton behavior."  <u>Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.</u>, No. Civ. A. 04C05091CLS, 2005 WL 445710, at *4 (Del. 2005).  Delaware courts have defined "gross negligence" in the duty-of-care context "as reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason."  <u>McPadden v. Sidhu</u>, 964 A.2d 1262, 1274 (Del. Ch. 2008).  And "fraud" under Delaware law requires, among other things, a showing that  the defendant made a representation  with knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth and that the defendant had the intent to induce the plaintiff to act, or refrain from acting.  <u>Snyder v. Jehovah's Witnesses, Inc.</u>, No. Civ.A. 05A-02-001, 2005 WL 2840285, at *3 (Del. 2005).

See, e.g., Waller v. DB3 Holdings, Inc., No. 3:07-CV-0491-D, 2008 WL 4526110, at *4 (N.D. Tex. Feb. 12, 2008).

The Amended Complaint, however, contains no specific factual allegations demonstrating that Blasnik or Karmin acted with the required state of mind.  Instead, they include only threadbare recitations of the legal elements — no facts that go beyond the required elements.   (See, e.g., ¶¶ 1, 2, 31, 40, 48, 91, & 95).  The same issues arise on attempting to plead a claim for gross negligence.  Plaintiffs must plead factual allegations showing that from Blasnik or Karmin's viewpoint, the conduct involved an "extreme degree" of risk in light of their understanding of the probability and the magnitude of the potential harm.  In re Lear Corp. Shareholder Litig., 967 A.2d 640, 652 n.45 (Del. Ch. 2008).[15]  Or Plaintiffs must plead particularized facts demonstrating Blasnik or Karmin acted with the subjective awareness of the risk and proceeded with conscious indifference to the rights, safety or welfare of others. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 248 (Tex. 2008).  Plaintiffs fail to plead any such allegations.  Again, they provide only threadbare recitation of legal elements.  (See, e.g., ¶¶ 1, 2, 31, 40, 48, 91, & 95).  Overall, Plaintiffs fail to plead particular allegations of willful misconduct, fraud, or gross negligence.  Without viable allegations on these elements, the exculpation and limitation provisions in the governing documents control and negate Plaintiffs' ability to even bring this claim.

---

[15]    This is analogous to a scienter requirement in a securities fraud suit, which requires a showing of "intent to deceive, manipulate, or defraud" or that the defendant acted with  "severe recklessness" in which the "danger of misleading buyers or sellers ... is either known to the defendant or is so obvious that the defendant must have been aware of it."  Southland, 365 F.3d at 366.  A complaint will survive a motion to dismiss only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Tellabs, Inc. v. Makor Issues & Rights, Ltd. 551 U.S. 308, 324 (2007).

4.      **Plaintiffs fail to allege a legally plausible damage theory against Blasnik or Karmin.**

Plaintiffs also fail to allege damages that flow directly from an undefined and unrecognized damage theory against Blasnik or Karmin.  Plaintiffs plead that as a result of the "defendants" collectively-plead conduct (another example of impermissible group pleading), they "lost their investment and earnings" in the Hub Fund.  This is woefully deficient.  Under Texas law, speculative damages are simply *not* recoverable.  In Texas, a party cannot recover damages that are based on speculation or conjecture, and uncertainty as to the fact of legal damages is fatal to recovery.  Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997); McKnight v. Hill & Hill Exterminators, Inc., 689 S.W.2d 206, 207 (Tex. 1985); see also Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 482 (Tex. App.—Fort Worth 2004, no pet.)(holding damages that are too remote, too uncertain, or purely conjectural cannot be recovered); Reardon v. LightPath Techs., Inc., 183 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)(holding damages theory based on "speculation upon speculation" failed as a matter of law).[16]

Any direct losses from mismanagement (e.g., bad investments) would, of course, be derivative.  To avoid this problem, Plaintiffs allege they were damaged because they allegedly failed to receive information, at some unstated point in time, that they now claim, in hindsight, would have caused them to withdraw their investment, again at some undefined point, before it decreased further in market value.  (¶¶ 5, 6, 7, 86, & 111).  But Plaintiffs provide no specific

---

[16]     Here, although Delaware law may control the duty question under the internal affairs doctrine; damages for the state-law breach-of-fiduciary-duty claim alleged in the Amended Complaint will be governed by Texas law.  Bayer Corp. v. DX Terminals, Ltd., 214 S.W.3d 586, 594 n.3 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  Moreover, because damages are an issue of substantive law, a district court sitting in diversity in Texas will apply Texas damages law.  See McKethan v. Tex. Farm Bureau, 996 F.2d 734, 741–42 (5th Cir. 1993).

dates or instances when they would have withdrawn or were prevented from doing so — their allegations are completely hypothetical.

Plaintiffs do not plead facts showing when and why each of them would have concluded to redeem his investment, and what each of them would have relied upon.  To rise above mere speculation, Plaintiffs must plead specific dates that each would have given proper notice and facts demonstrating how much each could have withdrawn under the LP Agreement.  Plaintiffs fail to do so.  Instead, Plaintiffs' damage model amounts to nothing more than using 20/20 hindsight to heap assumption upon assumption as to how Plaintiffs would have reacted to multiple items of news at various times in the past.  This kind of speculation upon speculation is fatal as a matter of law.  <u>See, e.g.</u>, <u>Reardon</u>, 183 S.W.3d at 439.  Accordingly, the Amended Complaint should be dismissed with prejudice, because Plaintiffs cannot plead a viable damages theory.

### C.   Plaintiffs' allegations also lack necessary Rule 9(b) factual detail.

Plaintiffs' pleading is rife with conclusory statements that lack the necessary facts to pass muster under Rule 9(b).  For example, throughout the Amended Complaint, Plaintiffs attribute statements to the Fund generally.  For example, ¶¶ 57, 64, 66, 69 refer to "the Fund" reports.  In ¶ 1, the Amended Complaint defines Parkcentral Global Hub Limited as "the Fund" that is the Hub Fund.  But the Hub Fund did not communicate with investors, only Parkcentral Management did.  Neither the Hub Fund, the Onshore  Fund, or Parkcentral Management is a defendant in this case.  Thus, statements  attributed to the "Fund" are irrelevant to claims against these Defendants and cannot satisfy Rule 8, let alone Rule 9(b).

By way of further example, Plaintiffs refer to documents generally, alleging that they contain false and misleading statements.  In ¶¶ 31, 35–39, and 43, Plaintiffs cite to "Due

Diligence Questionnaires."[17]  But they do *not* provide any dates for these documents — and multiple versions reflecting facts that existed at times of issuance existed over several years.  They allege in ¶ 90 that they were induced to invest over $200 million in the Fund.  However, these allegations, too, do not satisfy Rule 9(b) requirements, which require specific facts to be plead such as when the documents were created, who created them, and whether they were relied upon.  As discussed above, Plaintiffs do not plead facts justifying reliance on a Due Diligence Questionnaire in light of their contractual representations that they relied only on the PPM.  (Joint App. D. App. 00006).   Without these documents, their allegations fail under Rule 9(b).

Finally, when referring to documents, Plaintiffs do not provide facts specifying how Defendants Blasnik or Karmin participated in creating the specific language they allege is false.  This is, essentially, another group pleading failure.  For example, Plaintiffs cite to "Parkcentral's monthly report for February 2008," in ¶ 65, and allege that the report is a direct statement of "Blasnik and Karmin." The Fifth Circuit does not permit a plaintiff to attribute corporate statements to individuals solely on their title or position within the company.  Magruder v. Halliburton Co., No. 3:05-CV-1156-M, 2009 WL 854656, at * 7 (N.D. Tex. Mar. 31, 2009) (citing Southland, 365 F.3d at 356).  Rather, unattributed corporate statements that have no stated author *or* statements within documents *not* attributed to any individual may not be charged to one or more corporate officers absent specific factual allegations linking the individual corporate officer to the statement at issue.   Magruder, 2009 WL 854656, at *9.  Here, Plaintiffs fail to provide a specific factual link between Blasnik and Karmin (who is not even alleged to be

---

[17]    Due Diligence Questionnaires, as the name implies, were designed as general introductions to investors *before* they invested.  But the Subscription Agreement, which was signed by each investor at the time of the investment, states clearly and unambiguously that each investor "relied solely on the PPM."

an officer of Parkcentral Management) and any specific statement in the February 2008 report, nor do they provide facts demonstrating how either one was involved in creating the document.[18]

Similarly, Plaintiffs cite to the January 2008 monthly report in ¶ 64, and allege that report is a direct statement of "Blasnik and Karmin." But they again fail to provide any factual link and any alleged culpable language. Plaintiffs provide no facts to illuminate how any act by Blasnik or Karmin led to the alleged misrepresentation; they simply beg the question by stating it is so. Plaintiffs' allegations in ¶¶ 31, 41, 45, 46, 48, 53–55, 59, 63–68, 70, 72, 76, 84–92 suffer from a similar problem. The Fifth Circuit rejects allegations that attempt to tie individuals to corporate statements based solely on position, without facts tying specific individuals to specific actions that led to a specific misrepresentation. Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc., 537 F.3d 527, 533 (5th Cir. 2008); Financial Acquisition Partners, 440 F.3d at 287; Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 262 (5th Cir. 2005); Southland, 365 F.3d at 356.

### D.    Plaintiffs' secondary and vicarious liability theories fail, as well.[19]

To allege liability for a breach of fiduciary duty under a secondary or vicarious liability theory, Plaintiffs must first plead a viable claim of breach against a primary actor. See Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001) (noting that the first element of a secondary-liability claim is that the primary actor committed a tort); Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996). As demonstrated, Plaintiffs fail to allege a viable breach-of-fiduciary-duty claim

---

[18]    In ¶ 55 of the Amended Complaint, Plaintiffs state that "Defendants Blasnik and Karmin reviewed and approved and participated in the preparation of [the Fund's periodic reports, from July 2007 onward]." But Plaintiffs fail to identify these "periodic reports" with any degree of specificity. And as highlighted above, the Fund did not generate any reports that were sent to Plaintiffs. Moreover, Plaintiffs' statement that Blasnik and Karmin "reviewed and approved and participated" is merely a conclusory statement that this Court does not have to accept as true.

[19]    Messrs. Blasnik and Karmin join in the arguments advanced in the other Perot Entities' Motion to Dismiss and incorporate them herein by reference.

against Blasnik, Karmin, or any other defendant.[20]  Thus, secondary liability is groundless, and these claims should be dismissed with prejudice.

The only claim in which Plaintiffs attempt to attach secondary or vicarious liability to Blasnik or Karmin are allegations in ¶117 that "Karmin provided substantial assistance to defendant Blasnik in accomplishing the breach of fiduciary duty" and in ¶107 that "Defendant Karmin's misconduct was a breach of duty to plaintiffs and members of the proposed Class and a substantial factor in causing the breach of fiduciary duty by defendant Blasnik."  In Texas, for a claim of Assisting and Participating, a plaintiff must plead and prove:  (1) the primary actor's activity accomplished a tortious result; (2) the defendant provided substantial assistance to the primary actor in accomplishing the tortious result; (3) the defendant's own conduct, separate from the primary actor's, was a breach of duty to the plaintiff; and (4) the defendant's participation was a substantial factor in causing the tort.  See, e.g., City of Fort Worth v. Pippen, 439 S.W.2d 660, 665 (Tex. 1969); Restatement (Second) of Torts § 876(c).[21]  Plaintiffs' allegations against Karmin are nothing more than bare-bones recitations of these legal elements.  The allegations in ¶¶ 117–18 fail to allege any individualized or particularized facts as to how any specific act by Karmin (distinct and apart from Blasnik) could be tortious in nature or have been any factor, let alone a substantial factor, in any particular action of Blasnik that in any way led to any damages alleged by Plaintiffs.  Because Karmin had no fiduciary relationship with Plaintiffs,

---

[21]   Even if Delaware law applies, Plaintiffs have not adequately plead such a claim.  Under Delaware law, to prevail on a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must plead and prove the following:  (1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, knowingly participated in the breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary.  Cargill, Inc. v. JWH Special Circumstances LLC, 959 A.2d 1096, 1125 (Del. Ch. 2008).

his conduct could not breach a duty.  No well-plead facts exist that meet the mandate under Rule 9(b) or show a right to relief that is *plausible and above mere speculation* directly against Karmin (an employee) for secondary liability.

Further, under Texas law, to state a claim for assisting and participating, a plaintiff must allege facts showing the defendant "knowingly participated" in any alleged underlying breaches of fiduciary duty.  Kastner v. Jenkins & Gilchrist, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.).  Plaintiffs allege no such facts here as to Karmin.  While they mention Karmin in over thirty paragraphs in the Amended Complaint, they do so in conjunction with Blasnik, i.e., "Blasnik and Karmin," and provide no individualized and particularized facts that would demonstrate Karmin knew any alleged conduct by Blasnik was an actual breach of fiduciary duty and that Karmin, with that knowledge, then proceeded to assist Blasnik in the alleged breach. See, e.g., Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008).  No such allegations exist as to how Karmin, as an employee of Parkcentral Management, knowingly participated with Blasnik, another employee of Parkcentral Management, in any alleged breach of fiduciary duty that could run to limited partners in Parkcentral Fund.

In sum, Plaintiffs fail to plead allegations (1) establishing primary liability, (2) amounting to more than mere speculation, and (3) demonstrating the requisite knowledge of Karmin.  As a result, the secondary liability claims should also be dismissed with prejudice.

## V.  CONCLUSION

In an effort to avoid the burdens of undue motion practice and to serve judicial economy, counsel for Defendants invited Plaintiffs' counsel to meet about the allegations in the complaints. At that meeting in May 2009, counsel outlined for Plaintiffs the pleading deficiencies in the original two complaints.  As a result of those conversations, Plaintiffs agreed to replead their

complaint in a consolidated form according to an agreed briefing schedule, with a consolidated and amended complaint due in June 2009. <u>See</u> Pretrial Order No. 1 [Dkt. No. 6]. Plaintiffs then sought, and Defendants agreed to, multiple extensions. <u>See</u> Stipulations [Dkt. Nos. 10 & 12]. In August 2009, Plaintiffs, now joined by a third investor, filed the Amended Complaint. The 90 days of extra work only made the Amended Complaint a longer and more complicated puzzle.

Plaintiffs fail to plead sufficient factual allegations to sustain any element of a breach-of-fiduciary-duty claim against Steven L. Blasnik or Peter M. Karmin. Instead, they have tried to catch them in a "puzzle pleading"; however, the Amended Complaint, for all its length, fails to meet any of the necessary pleading thresholds. <u>See, e.g.</u>, <u>Goldstein</u>, 340 F.3d at 243 (discussing "puzzle pleadings"). Therefore, the Amended Complaint should be dismissed, and it should be dismissed *with prejudice* because amendment would be futile. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>see also</u> <u>Stripling v. Jordan Prod. Co.</u>, *LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). Plaintiffs cannot plead a legally cognizable claim of breach of fiduciary duty or any other claim against Blasnik and Karmin. <u>See</u> <u>Johnston v. Kruse</u>, 261 S.W.3d 895, 902 (Tex. App.—Dallas 2008, no pet.); <u>Cargill, Inc.</u>, 959 A.2d at 1125.

Respectfully Submitted

  s/ Timothy R. McCormick
Timothy R. McCormick, TBN 13463500
timothy.mccormick@tklaw.com

William L. Banowsky, TBN 01697125
bill.banowsky@tklaw.com

Michael W. Stockham TBN 24038074
michael.stockham@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
Telephone: 214.969.1700
Facsimile: 214.969.1750

ATTORNEYS FOR STEVEN L. BLASNIK &
PETER M. KARMIN

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2009, I electronically filed the foregoing document with the clerk for the United States District Court for the Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record in this matter.

      s/ Michael W. Stockham      

515751 000002 DALLAS 2544015.2