IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| IN RE: PARKCENTRAL GLOBAL LITIGATION | § | CIVIL ACTION NO. 3:09-CV-0765 |
| | § | **(Lead Case)** |
| | § | ECF |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**MOTION TO DISMISS AND SUPPORTING BRIEF OF THE PEROT FAMILY TRUST, HILL AIR COMPANY I, L.L.C. (d/b/a PEROT INVESTMENTS, INC.), PEROT MANAGEMENT G.P., L.L.C., PEROT G.P., INC., AND PETRUS SECURITIES, L.P.**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

THE ALLEGATIONS OF THE COMPLAINT ..................................................... 2

    I.   The Parties ..................................................................................................... 2

       A.   Plaintiffs and the Fund ........................................................................ 2

       B.   The Perot Entities ................................................................................ 4

    II.   Plaintiffs' Claims ......................................................................................... 7

ARGUMENT ............................................................................................................. 8

    I.   Applicable Pleading Standards ................................................................... 8

    II.   The Breach of Fiduciary Duty Claims Fail For Lack of a Duty and Lack of a Breach ...... 9

       A.   The Perot Entities Did Not Have a Fiduciary Relationship, or Any Relationship, With Plaintiffs ........................................................... 9

       B.   The Perot Entities' Corporate Affiliations With Parkcentral Management Do Not Give Rise to Any Fiduciary Duties ............................................. 11

       C.   The Perot Entities Did Not Breach Any Limited Fiduciary Duty They May Have Had ............................................................................... 12

    III.   The Aiding and Abetting Claims Fail Because Plaintiffs Fail to Plead Knowing Participation ........................................................................ 13

    IV.   The Perot Entities Are Not Responsible Under Any Theory of Vicarious Liability .... 15

       A.   Plaintiffs' Joint Enterprise Theory Fails ....................................... 15

       B.   Plaintiffs' Agency/*Respondeat Superior* Theory Fails ................. 17

       C.   Plaintiffs' Alter Ego/Veil Piercing Theory Fails ......................... 20

    V.   The Claim For Exemplary Damages Fails ............................................. 22

CONCLUSION ....................................................................................................... 23

## TABLE OF AUTHORITIES

### Federal Cases

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ..................................................... 9

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
    No. 08 Civ. 8852(VM), 2009 WL 2191318 (S.D.N.Y. July 23, 2009) .................................... 18

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008).................................................. 19

*In re Amaranth Natural Gas Commodities Litig.*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009).................................................. 14, 20

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................... 8, 14, 15

*Brown v. Bilek*,
    No. H-09-2193, 2009 WL 2601615 (S.D. Tex. Aug. 20, 2009)................................. 9

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) .................................................... 2

*In re Elec. Sys. Corp. ERISA Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004) ................................................. 9

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938)........................................................ 10

*Floyd v. CIBC World Markets, Inc.*,
    No. H-08-2048, 2009 WL 2633791 (S.D. Tex. Aug. 25, 2009).............................. 10

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
    No. C 09-2004, 2009 WL 2246212 (N.D. Cal. July 27, 2009).............................. 14

*Kalin v. Xanboo, Inc.*,
    No. 04 Civ. 5931 (RJS), 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009) .................................... 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)........................................................ 10

*Lusk v. Foxmeyer Health Corp.*,
    129 F.3d 773 (5th Cir. 1997) .................................................... 19

*Matsumura v. Benihana Nat'l Corp.*,
542 F. Supp. 2d 245 (S.D.N.Y. 2008)................................................................. 14

*Medina v. Bauer*,
No. 02 Civ. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004).................................. 9

*Mobil Oil Corp. v. Linear Films, Inc.*,
718 F. Supp. 260 (D. Del. 1989)......................................................................... 21

*Patel v. Holiday Hospitality Franchising, Inc.*,
172 F. Supp. 2d 821 (N.D. Tex. 2001) ................................................................. 9

*Pet Quarters, Inc. v. Badian*,
No. 4:04-CV-697, 2007 WL 1020538 (E.D. Ark. Mar. 30, 2007) ........................... 18

*Poole v. Sunset Fin. Servs., Inc.*,
No. 8:08CV399, 2009 WL 2208148 (D. Neb. July 17, 2009)................................... 18

*Richards Group v. Brock*,
No. 3:06-CV-0799-D, 2008 WL 2787899 (N.D. Tex. July 18, 2008)........................ 21

*Rolls-Royce Corp. v. Heros, Inc.*,
576 F. Supp. 2d 765 (N.D. Tex. 2008) ................................................................. 22

*Thrift v. Hubbard*,
44 F.3d 348 (5th Cir. 1995) .............................................................................. 21

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004)........................ 8

*United States v. Bestfoods*,
524 U.S. 51 (1998)........................................................................................... 20

*Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*,
No. H-06-1492, 2007 WL 400094 (S.D. Tex. Feb. 1, 2007)................................... 18

## State Cases

*Baptist Mem'l Hosp. Sys. v. Sampson*,
969 S.W.2d 945 (Tex. 1998)............................................................................... 18

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009) ..................... 11, 12, 13

*Bigelow/Diversified Secondary Partnership Fund 1990 v. Damson/Birtcher Partners*,
No. 16630-NC, 2001 WL 1641239 (Del. Ch. Dec. 4, 2001) ........................... 11, 12

*BMC Software Belg., N.V. v. Marchand*,
    83 S.W.3d 789 (Tex. 2007)...................................................................................... 20

*Cargill, Inc. v. JWH Special Circumstance, LLC*,
    959 A.2d 1096 (Del. Ch. 2008)................................................................... 11, 12, 13

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
    Civ. A. No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007).................................... 13

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    No. 15754, 2000 WL 1476663 (Del. Ch. Sept. 27, 2000) ........................................ 10

*Kastner v. Jenkens & Gilchrist, P.C.*,
    231 S.W.3d 571 (Tex. App. – Dallas 2007, no pet.)................................................. 13

*Lucas v. Tex. Indus., Inc.*,
    696 S.W.2d 372 (Tex. 1984)...................................................................................... 21

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ............................................................................... 13, 14

*Menetti v. Chavers*,
    974 S.W.2d 168 (Tex. App. - San Antonio 1998, no pet.) ...................................... 21

*Minyard Food Stores, Inc. v. Goodman*,
    80 S.W.3d 573 (Tex. 2002)...................................................................................... 17

*Pauley Petroleum Inc. v. Cont'l Oil Co.*,
    239 A.2d 629 (Del. 1968) ...................................................................................... 21

*S. Union Co. v. City of Edinburg*,
    129 S.W.3d 74 (Tex. 2003)...................................................................................... 21

*Saito v. McCall*,
    No. Civ. A. 17132-NC, 2004 WL 3029876 (Del. Ch. Dec. 20, 2004) ...................................... 14

*In re Santa Fe Pac. Corp. S'holder Litig.*,
    669 A.2d 59 (Del. 1995) ...................................................................................... 14

*SSP Partners v. Gladstrong Invs. Corp.*,
    275 S.W.3d 444 (Tex. 2008)........................................................................... 16, 20

*St. Joseph Hosp. v. Wolff*,
    94 S.W.3d 513 (Tex. 2002)........................................................................... 15, 16

*In re Telecomms., Inc. S'holders Litig.*,
   No. Civ.A. 16470-NC, 2003 WL 21543427 (Del. Ch. July 7, 2003) ....................................... 14

*Tex.-Ohio Gas, Inc. v. Mecom*,
   28 S.W.3d 129 (Tex. App. – Texarkana 2000, no pet.) ........................................................... 21

*Twin Bridges Ltd. P'ship v. Draper*,
   No. Civ. A. 2351-VCP, 2007 WL 2744609 (Del. Ch. Sept. 14, 2007) ................................... 21

*Wallace v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ............................................................................................... 21

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   872 A.2d 611 (Del. Ch. 2005) ................................................................................................... 9

*Willis v. Donnelly*,
   199 S.W.3d 262 (Tex. 2006) .............................................................................................. 20, 21

## State Statutes

Del. Code tit. 6, §17-1101 ............................................................................................................. 10

Tex. Bus. Corp. Act Ann. art. 2.21 (Vernon 2003) ...................................................................... 21

Tex. Rev. Civ. Stat. Ann. art. 6132b-10.01 (Vernon Supp. 2008) ................................................. 9

## Other Authorities

Restatement (Third) of Agency, § 7.03, comment d .................................................................... 19

The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), Perot Management G.P., L.L.C., Perot G.P., Inc., and Petrus Securities, L.P. (the "Perot Entities") move to dismiss the Consolidated Class Action Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), 8, 9(b), and 23.1, and respectfully show as follows:

## INTRODUCTION

There is no legal or factual basis for the Perot Entities to have been included as defendants in this lawsuit. None of the Perot Entities was a party to the Limited Partnership or Subscription Agreements that Plaintiffs signed to become limited partners of the investment fund at issue. None of the Perot Entities was responsible for or involved in making investment decisions for the fund. None of the Perot Entities issued any of the periodic reports about the fund which are alleged to have contained misrepresentations. Nor do Plaintiffs' claims even make sense, as Petrus Securities (an investment vehicle for members of the Perot family that was managed by Perot Investments) had considerable assets invested in the same portfolio as Plaintiffs and like Plaintiffs lost its entire investment in that portfolio.

In an apparent effort to gloss over the lack of basis for their claims against the Perot Entities, Plaintiffs rely on conclusory assertions and resort to group pleading in an effort to ascribe the alleged duties and conduct of the individual defendants to all "defendants" as a group.[1]  But Plaintiffs' impermissible pleading tactics only highlight what is clear from the Complaint:  Plaintiffs do not and cannot allege that they had any relationship with any of the Perot Entities, that the Perot Entities participated in any alleged misconduct, or are responsible in any way for Plaintiffs' losses.   The Complaint should accordingly be dismissed with prejudice.

---

[1] For ease of reference, this Motion refers to The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), Perot Management G.P., L.L.C., Perot G.P., Inc., and Petrus Securities, L.P. collectively as the "Perot Entities."  For purposes of evaluating the sufficiency of the Complaint, however, the allegations as to each entity must be separately considered.

## THE ALLEGATIONS OF THE COMPLAINT

I.     **The Parties**

    A.     **Plaintiffs and the Fund**

This case arises out of Plaintiffs' investment losses suffered in the Parkcentral Global investment fund.  (Compl. ¶1)  The fund itself was organized with a standard "feeder-hub" structure.   Qualified domestic investors could invest through the domestic feeder fund, Parkcentral Global L.P. ("Onshore Fund"), a Delaware limited partnership.  (Compl. ¶1)  The feeder fund was in turn a shareholder of Parkcentral Global Hub Limited ("Hub Fund"), a Bermuda company.  (Compl. ¶¶9, 20)  All investments and trades were made by the Hub Fund. (Compl. ¶20)

The Onshore Fund was only open to sophisticated investors.  In accordance with SEC rules and regulations applicable to unregistered securities, only "accredited investors" and "qualified purchasers" were permitted to invest in the fund.   (Defendants' Joint Appendix ("App.") Ex. 1 at D. App. 00003, 00010, 00018-27; App. Ex. 8 at App. 000187, 000194, 000202-211; App. Ex. 3 at D. App. 00086)[2]  In addition, a substantial minimum investment was required.  (App. Ex. 1 at D. App. 00003; App. Ex. 8 at App. 000187; App. Ex. 3 at D. App. 00085)

To become investors, Plaintiffs executed a Subscription Agreement.  By signing this agreement, Plaintiffs agreed, among other things, to become limited partners of the Onshore Fund pursuant to the terms of the Limited Partnership Agreement, which sets forth the relative rights and obligations of the partners.  (App. Ex. 1 at D. App. 00014; App. Ex. 8 at App. 000198; App. Ex. 2)  As fully described in the offering materials provided to Plaintiffs, the general

---

[2] On a motion to dismiss the Court can refer to documents cited or incorporated by reference in the Complaint.  *E.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

partner of the Onshore Fund was Parkcentral Capital Management, L.P. ("Parkcentral Management"), an entity which Plaintiffs have not named as a defendant.  (Compl. ¶20; App. Ex. 3 at D. App. 00085, 00087; App. Ex. 1 at D. App. 00003)  The Subscription Agreement between Plaintiffs and the Onshore Fund was executed by Parkcentral Management on the Onshore Fund's behalf, as was the Limited Partnership Agreement.  (App. Ex. at D. App. 00005, 00017; App. Ex. 2 at D. App. 00038, 00078)

As described in the operative documents provided to potential investors, the Onshore Fund was managed by its general partner, Parkcentral Management.  (App. Ex. 3 at D. App. 00085, 00087, 00089-92, 00095; App. Ex. 2 at D. App. 00044-46)  Parkcentral Management also served as the investment advisor for the Hub Fund.  (Compl. ¶20; App. Ex. 3 at D. App. 00096)  As such, Parkcentral Management conducted the fund's investment and trading activities.  (App. Ex. 3 at D. App. 00096)  Plaintiffs allege that Steven Blasnik, "as president of [Parkcentral Management], approved the establishment of each trading position in the Fund's portfolio," was "specifically responsible for deciding each of the Fund's position's size" and "approving the risk associated with each position." (Compl. ¶27)

As referenced in the Complaint (Compl. ¶¶55-57), investors in the Onshore Fund were provided each month with a report regarding the fund's performance.  These reports were issued by Parkcentral Management.  (*E.g.*, App. Ex. 5 at D. App. 00127; App. Ex. 6 at D. App. 00129)  On a quarterly basis, investors were provided with a more detailed report reviewing the fund's performance for the quarter, discussing the portfolio, providing information about the fund's leverage, and estimating the risk of the fund's strategies.  These reports were also issued by Parkcentral Management. (*E.g.*, App. Ex. 4 at D. App. 00124)

**B.      The Perot Entities**

The Complaint makes no substantive factual allegations against the Perot Entities and instead merely sets out the corporate structure:

- **The Perot Family Trust** – The Perot Family Trust is a trust organized under the Texas Trust Code.  (Compl. ¶9)  The Perot Family Trust wholly owns Parkcentral Capital GP, LLC, a Texas limited liability company which is not named as a defendant in this lawsuit.  (Compl. ¶19)  Parkcentral Capital GP, LLC is the 1% general partner of Parkcentral Management.  (Compl. ¶19)  Neither of the individual defendants (Mr. Blasnik and Peter Karmin) is alleged to have had any position with the Perot Family Trust.

- **Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.)** – Hill Air Company I, L.L.C. ("Perot Investments") is a Delaware limited liability company. (Compl. ¶10)  Its manager is Perot Management G.P., L.L.C. (Compl. ¶10)  Plaintiffs allege that Mr. Blasnik is employed by and president and sole director of Perot Investments. (Compl. ¶14)  Mr. Karmin is not alleged to have had any position with Perot Investments.

- **Perot Management G.P., L.L.C.** – Perot Management G.P., L.L.C. ("Perot Management G.P.") is a Texas limited liability company.  (Compl. ¶11)  Its sole manager is Mr. Blasnik.  (Compl. ¶11)  Perot Management G.P. is the manager of Perot Investments. (Compl. ¶11)  Mr. Karmin is not alleged to have had any position with Perot Management G.P.

- **Perot G.P., Inc.** – Perot G.P., Inc. ("Perot G.P.") is a Texas corporation.  (Compl. ¶12)  Mr. Blasnik is president and director of Perot G.P. (Compl. ¶12)  Perot G.P. is a general partner of Petrus Securities, L.P. (Compl. ¶12)  Mr. Karmin is not alleged to have had any position with Perot G.P.

- **Petrus Securities, L.P.** – Petrus Securities, L.P. ("Petrus Securities") is a Texas limited partnership which has two general partners:  (i) Perot Investments; and (ii) Perot G.P. (Compl. ¶13)  Petrus Securities is an entity through which members of the Perot family invest money.  (Compl. ¶¶23-24)  Plaintiffs allege that Petrus Securities is a limited partner of the Onshore Fund, the same limited partnership that Plaintiffs invested in.  (Compl. ¶13)[3]  Neither Mr. Blasnik nor Mr. Karmin is alleged to have had any position with Petrus Securities.

---

[3] The allegation that Petrus Securities was a limited partner of the Onshore Fund is not technically accurate.  At all times relevant to the Complaint, Petrus Securities' investment in the fund was through a direct ownership interest in the Hub Fund rather than an indirect interest through the Onshore Fund. (*E.g.*, App. Ex. 7 at D. App. 00158 (referring to "the investment of Petrus in the Hub Fund"))

As reflected in this corporate structure, none of the Perot Entities had a relationship with the Plaintiffs or the Onshore Fund, the limited partnership in which Plaintiffs invested:



More important than these sparse factual allegations is what the Complaint does not allege. The Complaint does not (and cannot) allege that any of the Perot Entities was a party to the Subscription Agreement or Limited Partnership Agreement. The Complaint does not (and cannot) allege that any of the Perot Entities was involved in making investment decisions on behalf of the fund.[4] The Complaint does not (and cannot) allege that any of the Perot Entities issued the periodic reports that Plaintiffs allege contained misstatements.

Since Plaintiffs cannot assert any facts tying the Perot Entities to any of the alleged misconduct, the Complaint instead relies on the type of conclusory assertions that are disregarded under controlling law. For example, the Complaint asserts that "[a]t all times relevant to this cause of action, defendants Blasnik and Karmin were acting as agents and/or representatives of" the Perot Entities and that "Blasnik's and Karmin's acts and/or omissions were directed by, controlled, approved, adopted and/or ratified by" the Perot Entities. (Compl. ¶¶ 91-92, 123; *see also* ¶¶31, 55, 77)

The Complaint also makes allegations as to all "defendants" despite the obvious differences in how each of the individual and entity defendants are situated. For example, Plaintiffs allege that they "entrusted their capital to defendants" (Compl. ¶108) even though it is clear from the face of the Complaint and the operative documents that the Perot Entities were not parties to any agreement with the Plaintiffs, never received any of their capital, and had no responsibility for managing the investments. Similarly, Plaintiffs claim that "Defendants"

---

[4] The Complaint asserts that Perot Investments provided "management services" or "investment management services" to Parkcentral Management (Compl. ¶¶10, 22) but does not set forth any facts as to the services provided. As explained in the Private Placement Memorandum referenced in the Complaint, during the time frame of the alleged misconduct Parkcentral Management and Perot Investments had a contractual relationship for Perot Investments "to perform certain middle and back office administrative services" and that those services were wholly paid for by Parkcentral Management. (App. Ex. 7 at D. App. 00149)

provided them with written documents that contained alleged misrepresentations (Compl. ¶31) even though those documents were not issued by any of the Perot Entities.

## II.     Plaintiffs' Claims

Plaintiffs assert four causes of action against each of the defendants:

In Count I (Breach of Fiduciary Duty), Plaintiffs allege that they "entrusted their capital to defendants" and that "[d]efendants therefore assumed" fiduciary duties.   (Compl. ¶108) Plaintiffs claim that "defendants" breached these fiduciary duties by allegedly overriding the fund's internal risk management controls and making misrepresentations regarding the fund's positions and liquidity.  (Compl. ¶109)  Plaintiffs also assert that the Perot Entities breached a duty to ensure that the other defendants complied with risk management procedures.  (Compl. ¶110)

In Count II (Aiding and Abetting), Plaintiffs claim that the Perot Entities are liable for aiding and abetting alleged breaches of fiduciary duty by Mr. Blasnik and Mr. Karmin.  (Compl. ¶¶113-115)  The Complaint asserts in conclusory fashion that the Perot Entities "were aware that defendants Blasnik's and Karmin's willful misconduct constituted a breach of their fiduciary duty," "intended to assist and/or encourage them in breaching such duty," and that the Perot Entities' "assistance and/or encouragement was a substantial factor in causing the breach of fiduciary duties owed by defendants Blasnik and Karmin."  (Compl. ¶¶114-115)

In Count III (Vicarious Liability), Plaintiffs assert that the Perot Entities are responsible for the alleged misconduct of Mr. Blasnik and Mr. Karmin under a "joint enterprise liability" theory or under an agency/*respondeat superior* theory.  (Compl. ¶¶120-124)  Plaintiffs also assert that The Perot Family Trust is liable under an "alter ego/piercing the corporate veil" theory for the alleged liabilities of the other entities named as defendants. (Compl. ¶125)

In Count IV (Exemplary Damages), Plaintiffs assert that they are entitled to exemplary damages for the alleged wrongful conduct asserted earlier, and further claim that the Perot Entities "are responsible for all exemplary damages assessed against defendants Blasnik and Karmin" because the Perot Entities allegedly "directed, controlled, approved, adopted, and/or ratified the acts of the individual defendants." (Compl. ¶¶127-30)

## ARGUMENT[5]

### I.      Applicable Pleading Standards

As the Supreme Court has recently reaffirmed, a plaintiff cannot state a claim under Rule 8 by offering "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Id*. at 1949. A claim has facial plausibility when the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. Where the well-pleaded facts of a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint falls short of this standard and should be dismissed. *Id*.

The pleading bar is higher in cases like this one, where Rule 9(b) is applicable. As set forth more fully in the motion to dismiss filed by the individual defendants, the heightened pleading standards of Rule 9(b) are applicable because Plaintiffs' claims sound in fraud. *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. Civ. A. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004) (noting that "[c]laims of breach of fiduciary duty are subject to Rule

---

[5] In the interest of avoiding duplicative briefing, the Perot Entities hereby incorporate by reference the arguments set forth by the individual defendants.

9(b) when the alleged breach consists of fraudulent conduct"); *see also Brown v. Bilek*, No. H-09-2193, 2009 WL 2601615, at * 2 (S.D. Tex. Aug. 20, 2009); *In re Elec. Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004).  Plaintiffs must therefore plead, with factual particularity, the "who, what, when, where, and how" of their claims. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

Both Rules 8 and 9(b) also require that a plaintiff plead facts as to each defendant.  It is impermissible to simply "lump all defendants together" without differentiating between them. *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) ("general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)"); *Medina v. Bauer*, No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (a plaintiff fails to satisfy Rule 8 where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong).

## II.    The Breach of Fiduciary Duty Claims Fail For Lack of a Duty and Lack of a Breach

### A.    The Perot Entities Did Not Have a Fiduciary Relationship, or Any Relationship, With Plaintiffs

Plaintiffs' breach of fiduciary duty claims against the Perot Entities fail in the first instance because the Perot Entities did not owe any fiduciary duties to Plaintiffs.  None of the Perot Entities had any relationship with the Plaintiffs and none of them exercised actual control over the Onshore Fund's property, as would be required to impose even a limited fiduciary duty of loyalty.

Fiduciary relationships are special relationships and are not lightly created.  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624-25 (Del. Ch. 2005) *rev'd in part on other*

*grounds*, 901 A.2d 106 (Del. 2006).[6]  Generally speaking, a fiduciary relationship arises where one person places special trust in another and relies on that person's superior knowledge and expertise.  *Id.*  In the context of a limited partnership, it is the general partner that is charged with managing the assets of the partnership, and fiduciary duties are therefore imposed on the general partner.  *E.g., Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. 15754, 2000 WL 1476663, at *20 (Del. Ch. Sept. 27, 2000).[7]

Here, Parkcentral Management was the general partner of the Onshore Fund.  (Compl. ¶20)  As reflected in the limited partnership agreement, Parkcentral Management had the authority and responsibility to manage and conduct the business and affairs of the partnership. (App. Ex. 2 at D. App. 00044-46)  As stated in the Private Placement Memorandum, Parkcentral Management in fact accepted and fulfilled this responsibility: "Parkcentral Capital Management, L.P., a Texas limited partnership, serves as the general partner of the Fund and is responsible for all aspects of the Fund's investment and trading activities."  (App. Ex. 3 at D. App. 00087) Plaintiffs cannot rewrite the operative documents and lump all defendants together by alleging in conclusory fashion that they "entrusted their capital to defendants."  (Compl. ¶108); *Floyd v. CIBC World Markets, Inc.*, No. H-08-2048, 2009 WL 2633791, at *4 (S.D. Tex. Aug. 25, 2009) ("Plaintiff cannot avoid the clear and unequivocal import of these documents that relevant misconduct, if any, was committed by CWM Corp.  Simply pleading that the alleged misconduct was collective in nature, without identifying specific conduct by CWM, Inc. is insufficient to meet Plaintiff's pleading burden.").  As is clear from the operative documents, it was Parkcentral

---

[6] The Onshore Fund is a Delaware limited partnership and Delaware law is applicable to matters relating to its internal affairs. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); Tex. Rev. Civ. Stat. Ann. art. 6132b-10.01(a) (Vernon Supp. 2008).

[7] The general partner's fiduciary duties may be modified in the partnership agreement.  Del. Code tit. 6, § 17-1101(f) (2004).

Management – not any of the Perot Entities – in whom Plaintiffs' trust was placed and which was responsible for managing Plaintiffs' capital. Plaintiffs do not allege that they had any interaction with any of the Perot Entities. Plaintiffs had no relationship, much less a fiduciary relationship, with any of the Perot Entities.

> **B.** **The Perot Entities' Corporate Affiliations With Parkcentral Management Do Not Give Rise to Any Fiduciary Duties**

The Perot Entities cannot be deemed to have had fiduciary duties to Plaintiffs based on the corporate relationships that some of them had with Parkcentral Management. Directors or controlling shareholders of a general partner may owe a limited fiduciary duty of loyalty to the partnership *if they exercised actual control over the assets of the partnership*. *Cargill, Inc. v. JWH Special Circumstance, LLC*, 959 A.2d 1096, 1119-21 (Del. Ch. 2008). The circumstances, however, under which fiduciary duties will be imposed on affiliates of a general partner are limited. As a matter of law, the mere ability to control the partnership or "ownership-either direct or indirect-of the general partner does not result in the establishment of a fiduciary relationship" between the owner and the partnership. *Bigelow/Diversified Secondary Partnership Fund 1990 v. Damson/Birtcher Partners*, No. 16630-NC, 2001 WL 1641239, at *8 (Del. Ch. Dec. 4, 2001); *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009) ("to have any fiduciary duties to an entity, the affiliate must exert control over the assets of that entity"). It is only if an affiliate of the general partner *actually exercises control over the transactions challenged in the complaint* that the affiliate will be deemed to have had a limited fiduciary duty. *Cargill*, 959 A.2d at 1119-20.

To survive a motion to dismiss on this theory, Plaintiffs must therefore have alleged specific facts giving rise to the reasonable inference that each of the Perot Entities exercised

actual control over the Onshore Fund in connection with the alleged improper investments or misrepresentations. *Cargill*, 959 A.2d at 1121. The Complaint does not (and cannot) allege any such facts. It alleges only that The Perot Family Trust was the indirect owner of Parkcentral Management, precisely the type of allegation of ownership and ability to control that is insufficient as a matter of law. *Bigelow*, 2001 WL 1641239, at *8; *Bay Center*, 2009 WL 1124451, at *9; *Cargill*, 959 A.2d at 1119-20.[8] The Complaint does not (and cannot) allege facts suggesting that any of the Perot Entities were involved in making investment decisions for the Onshore Fund or the Hub Fund. Nor does the Complaint allege facts showing that any of the Perot Entities were involved in making the representations regarding the Onshore Fund or the Hub Fund that Plaintiffs claim were false.[9] Since there are no facts from which the Court could reasonably infer that any of the Perot Entities exercised actual control over the transactions challenged in the Complaint, there can be no basis to find that the Perot Entities owed fiduciary duties to Plaintiffs. *Cargill*, 959 A.2d at 1119-20.

### C. The Perot Entities Did Not Breach Any Limited Fiduciary Duty They May Have Had

In addition to failing to show that the Perot Entities owed fiduciary duties, the Complaint also fails to plead a cognizable breach. Courts imposing fiduciary duties on affiliates of a general partner based on the exercise of control have been careful to apply only a limited duty of loyalty: "the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership." *Bay Center*, 2009 WL 1124451, at *10. To plead a breach of any limited fiduciary duty owed by the Perot Entities, Plaintiffs must therefore have

---

[8] The Complaint does not even assert that the other four entities (Perot Investments, Perot Management G.P., Perot G.P. and Petrus Securities) had the ability control the Onshore Fund.

[9] To the extent Plaintiffs' claims are premised on an agency theory, those claims fail for the reasons set forth *infra* in § IV.B.

alleged specific facts giving rise to the reasonable inference that each of the Perot Entities exercised control over the Onshore Fund to their own benefit at the expense of the Onshore Fund.  *Bay Center*, 2009 WL 1124451, at *10 ("Bay Center must therefore plead that Nevis benefited himself at the expense of Emery Bay in order to withstand this motion to dismiss"); *Cargill*, 959 A.2d at 1121 ("to defeat the pending motions to dismiss . . . JWH would have to allege specific facts that lead to a reasonable inference that  . . . CIS or Cargill  . . . exercised that control to benefit themselves at the expense of the Trust.").  The Complaint is completely devoid of any such allegations.  Nowhere does the Complaint allege any facts from which the Court could reasonably infer a breach of this limited duty of loyalty.

### III.    The Aiding and Abetting Claims Fail Because Plaintiffs Fail to Plead Knowing Participation

In Count II, Plaintiffs allege that the Perot Entities aided and abetted alleged breaches of fiduciary duty by Mr. Blasnik and Mr. Karmin. (Compl. ¶¶113-15)  Even if the Complaint adequately states a claim for breach of fiduciary duty against the individual defendants, the aiding and abetting claim fails because Plaintiffs have not pled any facts from which the Court could reasonably infer that the Perot Entities knowingly participated in any alleged breach.[10]

To state a claim for aiding and abetting a breach of fiduciary duty, Plaintiffs must allege facts from which the Court could reasonably infer that the Perot Entities "knowingly participated" in the underlying alleged breaches of fiduciary duties.  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.).  Knowing participation requires that the third party act with the

---

[10] The Perot Entities could not have aided and abetted a breach that did not exist, so if the Court dismisses the breach of fiduciary duty claims against Mr. Blasnik and Mr. Karmin then the aiding and abetting claims against the Perot Entities also fail as a matter of law.  *Globis Partners, L.P. v. Plumtree Software, Inc.*, Civ. A. No. 1577-VCP, 2007 WL 4292024, at *15 (Del. Ch. Nov. 30, 2007) (there can be no liability for aiding and abetting if "the Complaint fails to state a claim for any underlying breach of fiduciary duty").

knowledge that the conduct advocated or assisted constitutes a breach of fiduciary duty. *Malpiede*, 780 A.2d at 1097.

Here, the Complaint's assertions of knowing participation are not factual, but rather wholly conclusory. Plaintiffs merely assert that the Perot Entities "were aware that defendants Blasnik's and Karmin's willful misconduct constituted a breach of their fiduciary duty . . . and intended to assist and/or encourage them in breaching such duty." (Compl. ¶114) This is precisely the type of "formulaic recitation of the elements of a cause of action" that the Supreme Court has held is entitled to no weight. *Iqbal*, 129 S. Ct. at 1949-50. Such conclusory allegations are routinely held insufficient to survive a motion to dismiss. *E.g., In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995); *Saito v. McCall*, No. Civ. A. 17132-NC, 2004 WL 3029876, at *9 (Del. Ch. Dec. 20, 2004); *Fortaleza v. PNC Fin. Servs. Group, Inc.*, No. C 09-2004, 2009 WL 2246212, at *12 (N.D. Cal. July 27, 2009); *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 390-91 (S.D.N.Y. 2009). This allegation also impermissibly lumps all of the Perot Entities together.

The Complaint is devoid of any facts giving rise to an inference that any of the Perot Entities knew of or participated in any alleged breaches of fiduciary duty. The Complaint does not allege what the Perot Entities allegedly knew about the individual defendants' alleged breaches, when they allegedly learned that information, how they allegedly learned it, or how the Perot Entities would know that such information was a breach of fiduciary duty. *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251-52, 259 (S.D.N.Y. 2008) (dismissing claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty under Rule 9(b)). Nor does the Complaint identify a single fact suggesting that any of the Perot Entities participated in, assisted in, or encouraged the alleged breaches. *In re Telecomms., Inc. S'holders Litig.*, No.

Civ.A. 16470-NC, 2003 WL 21543427, at *4 (Del. Ch. July 7, 2003) (dismissing aiding and abetting claim where "plaintiffs fail[ed] to allege specifically how [defendant] may have aided and abetted the . . . breach of fiduciary duty and fail[ed] to allege facts from which the court may infer knowing participation.").[11]  There are simply no allegations that any of the Perot Entities did anything that could be construed as knowingly participating in a breach of fiduciary duty. The aiding and abetting claims should accordingly be dismissed.

## IV.   The Perot Entities Are Not Responsible Under Any Theory of Vicarious Liability

In Count III, Plaintiffs assert a grab bag of theories of vicarious liability in an effort to hold the Perot Entities responsible for the alleged breaches of fiduciary duty by Mr. Blasnik and Mr. Karmin.  They also seek to hold The Perot Family Trust liable for the alleged liabilities of the other Perot Entities.  Each of these theories fails because the Complaint relies solely on mere legal conclusions without supporting facts that give rise to a reasonable inference of liability.

### A.   Plaintiffs' Joint Enterprise Theory Fails

To plead and prove the existence of a "joint enterprise," plaintiffs must show (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.  *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002).  Once again, the Complaint merely recites the elements of this theory (Compl. ¶120) which is insufficient as a matter of law to survive a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1949.  Nowhere does the Complaint allege any supporting facts regarding any of these elements as to any of the Perot Entities.

---

[11] To the extent Plaintiffs' claims are premised on an agency theory, those claims fail for the reasons set forth *infra* in §IV.B.

For example, the Complaint does not allege who formed the alleged agreement or when the alleged agreement was formed, nor does it identify the allegedly agreed-upon "common purpose."  As the Texas Supreme Court recently made clear in rejecting the "single business enterprise theory," allegations regarding common employees, common offices, common business names, and sharing of employees are insufficient to impose joint liability because they do "not entail the level of agreement required for joint enterprise liability."  *SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 450-52 (Tex. 2008).  There is no well-pleaded basis from which the Court can infer that any of the Perot Entities had an agreement with Mr. Blasnik, Mr. Karmin, or any other person or entity to jointly run the Onshore Fund.  The only reasonable inference from the well-pleaded facts is that the fund was run by Parkcentral Management and Mr. Blasnik as its manager and chief risk officer.

Nor does the Complaint plead any facts regarding the Perot Entities' purported pecuniary interest, much less the existence of a "community of interest," which requires that the members of the enterprise share "without special or distinguishing characteristics."  *St. Joseph Hosp.*, 94 S.W.3d at 527-28.[12]  The Complaint further fails to plead that each of the Perot Entities had a right to control the Onshore Fund, much less that they, Mr. Blasnik, and Mr. Karmin each had an equal right of control.  *St. Joseph Hosp.*, 94 S.W.3d at 528.  To the contrary, the operative documents reflect that Parkcentral Management was in control of the Onshore Fund, definitively negating the element of equal right of control.

In sum, the Complaint does not (and cannot) set forth facts from which the Court could reasonably infer the existence of a "joint enterprise" involving the Perot Entities and there is no basis to hold them liable for the alleged wrongdoing of other parties.

---

[12] For example, a franchisor and a franchisee both have a financial interest in the franchisee's success, but as the Texas Supreme Court explained, that is not a "community of pecuniary interest" because the franchisee's profits are not shared in a communal nature.  *St. Joseph Hosp.*, 94 S.W.3d at 527-28.

B.      **Plaintiffs' Agency/*Respondeat Superior* Theory Fails**

Plaintiffs next claim that the Perot Entities can be held liable under an agency or *respondeat superior* theory, asserting in conclusory fashion that "defendants Blasnik and Karmin were the[ir] employees, agents and/or representatives."  (Compl. ¶123)

As an initial matter, Plaintiffs' agency theory fails as to The Perot Family Trust and Petrus Securities because the Complaint fails to plead the existence of an agency relationship between these entities and the individual defendants.  The Complaint does not allege that Mr. Blasnik held any position with either of these two entities and Mr. Karmin is not alleged to have held any position with any of the Perot Entities.  (Compl. ¶¶14, 15)  For this reason alone there is no basis on which to hold The Perot Family Trust or Petrus Securities liable under an agency or *respondeat superior* theory.[13]

Nor can any of the Perot Entities be held liable under an agency or *respondeat superior* theory because the Complaint does not (and cannot) plead facts giving rise to a reasonable inference that the individual defendants were acting within the scope of any agency on behalf of the Perot Entities when they allegedly breached their fiduciary duties.  A principal can only be held vicariously liable for the torts of an agent where the agent was acting within the scope of his agency when he committed the tort. *E.g., Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d

---

[13] In another section of the Complaint, Plaintiffs allege that Ross Perot Sr. "approved and directed" Mr. Blasnik's decisions "in his capacity as an agent, representative and/or controlling stakeholder in defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus."  (Compl. ¶¶128-29)  Nowhere does the Complaint allege that Mr. Perot had any position with any of the Perot Entities and it provides no factual basis from which the Court could reasonably infer that Mr. Perot had an agency relationship with any of the Perot Entities, much less any factual basis from which to infer that Mr. Perot was acting on behalf of any of the Perot Entities during the alleged meetings with Mr. Blasnik.  The allegations that Mr. Blasnik and Mr. Perot met on a monthly basis are also far too conclusory to plead that Mr. Perot had any involvement in the specific conduct complained of.  By their own terms, these paragraphs of the Complaint includes allegations referring to "other Perot-related funds and businesses which defendant Blasnik ran" (Compl. ¶129) -- i.e. matters unrelated to the Onshore Fund or the Hub Fund  -- and the Complaint does not allege what information was presented by Mr. Blasnik to Mr. Perot or what was discussed.

573, 577 (Tex. 2002).[14]   To plead a viable a claim under an agency theory, a plaintiff must therefore plead facts giving rise to a reasonable inference that the alleged agent was acting within the scope of his agency when committing the alleged misconduct.  *Poole v. Sunset Fin. Servs., Inc.*, No. 8:08CV399, 2009 WL 2208148, at *6 (D. Neb. July 17, 2009) (dismissing claim based on agency/*respondeat superior* theory where complaint failed to allege facts showing that individual's wrongful conduct on behalf of one company was related to his role as agent of another defendant company); *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, No. 08 Civ. 8852(VM), 2009 WL 2191318, at *12 (S.D.N.Y. July 23, 2009) (complaint insufficient to state agency theory without facts supporting assertion that agent of one company had authority over reviewing account statements of another).  Conclusory allegations of agency are insufficient under both Rules 8 and 9(b). *Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. H-06-1492, 2007 WL 400094, at *4 (S.D. Tex. Feb. 1, 2007) (Rule 9(b) applies where complaint seeks to use agency principles to impute allegedly fraudulent misstatements); *Pet Quarters, Inc. v. Badian*, No. 4:04-CV-697, 2007 WL 1020538, at *6 (E.D. Ark. Mar. 30, 2007).

Here, Plaintiffs merely allege that "[a]t all times relevant to this cause of action, defendants Blasnik and Karmin were acting as agents and/or representatives of defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus"  (Compl. ¶91) Entirely absent from the Complaint are well-pleaded facts from which to infer that making investment decisions for the Onshore Fund or issuing reports about the Onshore Fund's

---

[14] The Complaint makes passing reference to "apparent agency" and "agency by estoppel" (Compl. ¶122), but those theories are only applicable if Plaintiffs could show that (i) they had a reasonable belief that the individual defendants were agents of the Perot Entities; (ii) such belief was generated by the Perot Entities affirmatively holding out the individual defendants as their agents or knowingly permitting the individual defendants to hold themselves out as their agents; and (iii) they justifiably relied on the representation of authority. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998).  The Complaint does not make any such allegations and there is no basis for the Plaintiffs -- sophisticated investors who received the private placement memorandum and entered into written subscription and limited partnership agreements -- to claim that they did not know which entity they were dealing with.  The operative written documents render impossible any such assertion.

investments was within the scope of Mr. Blasnik's agency with any of the Perot Entities (which the Complaint does not and cannot plead had any involvement in managing the affairs of the Onshore Fund).   To the contrary, the Complaint affirmatively alleges that Mr. Blasnik was acting "as president of [Parkcentral Management]" when he made the relevant investment decisions   (Compl. ¶27), which is also the only plausible inference because Parkcentral Management was responsible for managing the Onshore Fund and the investments.   There is no basis to attribute Mr. Blasnik's actions in his capacity as an employee of Parkcentral Management to any of the Perot Entities.  *See* Restatement (Third) of Agency, § 7.03, comment d ("When the same individuals serve multiple entities as their officers, directors, or employees . . . [t]here is a general presumption that contracts and other transactions entered into by a shared officer are attributed to the entity for which the officer purports to be acting."); *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997) (noting the "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership" and requiring plaintiff to prove that individuals "were acting in their capacity as officers of [the relevant entity]" when they approved the decision at issue); *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931 (RJS), 2009 WL 928279, at *3-6, 10 (S.D.N.Y. Mar. 30, 2009) (dismissing complaint against defendant RDI because conclusory allegations were insufficient to support a finding that individual defendants were acting as RDI's agents, rather than as agents of defendant Xanboo, when they made alleged misrepresentations); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 541, 546-47 (S.D.N.Y. 2008) (company not responsible for knowledge and conduct of individual defendants, despite allegation of employment, where those individuals were performing services within the scope of their employment with another entity when they

allegedly manipulated prices); *In re Amaranth*, 612 F. Supp. 2d at 394. The Perot Entities therefore cannot be held liable under an agency/*respondeat superior* theory.

### C. Plaintiffs' Alter Ego/Veil Piercing Theory Fails

Plaintiffs' alter ego/piercing the corporate veil theory is asserted only as to The Perot Family Trust, claiming that The Perot Family Trust should be held responsible for the alleged liability of the other Perot Entities. (Compl. ¶125) This theory fails in the first instance because the Complaint does not (and cannot) plead a viable underlying theory of liability as to Perot Investments, Perot Management G.P., Perot G.P., or Petrus Securities.

More fundamentally, there is no basis in law or fact for the Court to disregard the separateness of the legal entities and impose the purported liability of one entity on another entity. It is a bedrock principle of corporate law that separate entities are treated as distinct and even a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). Piercing the corporate veil is therefore an extraordinary remedy reserved for only extreme situations. *SSP Partners*, 275 S.W.3d at 455.

Under Texas common law, a court will not disregard the separate existence of a limited liability entity absent a showing of fraud or fraud-like circumstances, requiring "evidence of abuse" along the lines of "fraud, evasion of existing obligations, circumvention of statutes, monopolization, [or] criminal conduct." *SSP Partners*, 275 S.W.3d at 455; *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2007) (entities' separate legal identities will not be disregarded "unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime").[15]

---

[15] Texas law generally controls the veil-piercing issue because the entities that Plaintiffs seek to disregard are formed under Texas law (with the exception of Perot Investments, which is a Delaware entity) and all of the entities

The requisite showing of fraud is even higher in cases like this one where the alleged claims arise out of Plaintiffs' voluntary, contractual relationship with the Onshore Fund.  *Twin Bridges Ltd. P'ship v. Draper*, No. Civ. A. 2351-VCP, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (limited partnerships are a creature of contract and statute and the "provisions of the partnership agreement define the contractually bargained rights and responsibilities of those who are parties to the agreement").  In such cases, the plaintiffs knew which entity or entities they were dealing with and the parties could apportion the risk of loss through negotiations.  *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 375 (Tex. 1984); *Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App. – San Antonio 1998, no pet.).  A Texas statute therefore requires that in a case arising out of or relating to a contractual relationship, a plaintiff cannot pierce the corporate veil, regardless of the specific theory (e.g., alter ego, sham to perpetrate a fraud, etc.), without a showing of "actual fraud."  Tex. Bus. Corp. Act Ann. art. 2.21 (Vernon 2003); *Thrift v. Hubbard*, 44 F.3d 348, 354 (5th Cir. 1995); *Willis*, 199 S.W.3d at 272-72; *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex. 2003).  This "actual fraud" standard requires proof that the party sought to be held liable for an entity's obligations acted with purposeful dishonesty or intent to deceive for its "direct personal benefit"  and is applicable to tort claims arising out or relating to a contractual relationship.  Tex. Bus. Corp. Act Ann. art. 2.21; *Menetti*, 974 S.W.2d at 173-74; *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 137 (Tex. App. – Texarkana 2000, no pet.).

---

have their principal place of business in Texas.  *The Richards Group v. Brock*, No. 3:06-CV-0799-D, 2008 WL 2787899, at *2 (N.D. Tex. July 18, 2008).  Delaware law similarly requires "[f]raud or something like it" before disregarding the separateness of corporate entities.  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989); *see also Wallace v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task" and "requires that the corporate structure cause fraud or similar injustice.  Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotations and citations omitted); *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) (veil-piercing "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved").

Here, there is no basis to hold The Perot Family Trust responsible for the alleged liability of the other Perot Entities.  As an initial matter, the Complaint does not even allege a corporate relationship between The Perot Family Trust and the other Perot Entities named as defendants. The Perot Family Trust is not alleged to have an ownership interest in the other entities or to be under common ownership.  And even if a veil-piercing claim could stand in the absence of a corporate relationship, the Complaint merely parrots the legal standards (Compl. ¶125) without offering any factual allegations to justify disregarding the separate form of any of the Perot Entities.  *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008) ("Conclusory allegations of alter ego status will not survive a motion to dismiss").  Nowhere does the Complaint allege any facts (much less the factual details required by Rule 9(b)) suggesting that The Perot Family Trust engaged in actual fraud or took any action with the intent to deceive Plaintiffs for its own benefit.  Nor does the Complaint allege any abuses of the corporate form, such as co-mingling of assets or diversion of entity assets to avoid paying corporate debts.   The Complaint is wholly devoid of any factual allegations of fraud, crime or other injustice that could support piercing the business forms of any entity.

## V.     The Claim For Exemplary Damages Fails

In Count IV of the Complaint, Plaintiffs assert that they are entitled to exemplary damages and that the Perot Entities should be held responsible for any exemplary damages assessed against the individual defendants because the Perot Entities "directed, controlled, approved, adopted, and/or ratified the acts of the individual defendants."  (Compl. ¶128)  This claim is thus wholly duplicative of the vicarious liability theories asserted in Count III and fails for the same reasons.

## CONCLUSION

Despite having months and multiple extensions to investigate and file the Complaint, Plaintiffs are unable to set forth any well-pleaded facts in support of their claims against the Perot Entities.  They instead rely on wholly conclusory assertions that are inadequate as a matter of law under controlling Supreme Court precedent.  Plaintiffs have not and cannot assert any legal or factual basis for the Perot Entities to be named as defendants in this action and the Complaint should be dismissed as to the Perot Entities with prejudice.

October 20, 2009

By:  /s/ Daniel H. Gold

Barry F. McNeil, TBN 13829500
barry.mcneil@haynesboone.com
Daniel H. Gold, TBN 24053230
daniel.gold@haynesboone.com
**HAYNES AND BOONE, L.L.P.**
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  214-651-5000
Facsimile:  214-651-5940

**Counsel For The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), Perot Management G.P., L.L.C., Perot G.P., Inc., and Petrus Securities, L.P.**

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF

system on this 20th day of October, 2009 to the individuals listed below:

Timothy R. McCormick
William L. Banowsky
Michael W. Stockham
**THOMPSON & KNIGHT, L.L.P.**
1722 Routh Street, Suite 1500
Dallas, Texas  75201-2533

R. Dean Gresham
Joel M. Fineberg
**FINEBERG / GRESHAM**
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219


Darren Robbins
James I. Jaconette
**COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP**
655 West Broadway, Suite 1900
San Diego, California 92101


/s/ Daniel H. Gold