**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| **IN RE: PARKCENTRAL GLOBAL LITIGATION** | **CIVIL ACTION NO. 3:09–CV–0765–M (LEAD CASE)** |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Joint Motion to Dismiss of (1) The Perot Family Trust, (2) Hill Air Company I, L.L.C., (3) Perot Management G.P., L.L.C., (4) Perot G.P., Inc., and (5) Petrus Securities, L.P. (collectively "the Perot Entities") [Docket Entry #19], and the Motion to Dismiss of Steven L. Blasnik and Peter M. Karmin [Docket Entry #17]. For the reasons stated below, the Motions to Dismiss are **GRANTED**, with specific opportunities to replead.

### *Background*

Plaintiffs are individuals and entities who invested as limited partners in Parkcentral Global, L.P. ("Parkcentral"), a hedge fund organized as a Delaware limited partnership. This suit arises out of the total loss of value of Plaintiffs' limited partnership interests. The Plaintiffs (who may be referred to also as the "limited partners") invested on or before July 1, 2007, and had not disposed of their investments as of November 2008. The Plaintiffs are described below:

- **Southern Avenue Partners, L.P.** is a Delaware limited partnership that invested millions of dollars in Parkcentral.

- **Levine Capital Ltd.** is a Texas limited partnership that invested millions of dollars in Parkcentral.

- **Deborah Bash Mullen** is a person who invested one million dollars in Parkcentral.

The Defendants, and the other entities allegedly involved with the Plaintiffs' investments, are described below:

- **Parkcentral Global Hub, Limited (the "Foreign Fund" or the "Fund")** is a Bermuda company. Parkcentral was the shareholder of, and domestic feeder fund to, the Foreign Fund, through which all of Parkcentral's investments and trading activities were conducted.

- **Parkcentral Capital Management, L.P. ("PCCM")** is a Texas limited partnership. It is the general partner of, and investment advisor for, Parkcentral and the Foreign Fund. PCCM managed the Foreign Fund, approved each trading position in Parkcentral's portfolio, knew the risk and leverage associated with each position, and issued periodic reports to Parkcentral's limited partners.

- **The Perot Family Trust** is a trust formed under the Texas Trust Code. The Trust wholly owns PCCM and **Parkcentral Capital G.P., L.L.C. ("Parkcentral Capital")**, a Texas limited liability company, which is the general partner of PCCM.[1]

- **Perot Management G.P., L.L.C. ("Perot Management")** is a Texas limited liability company. It is the manager of **Hill Air Company I, L.L.C. d/b/a Perot Investments, Inc. ("Perot Investments")**, a Delaware limited liability company, which provides some management services to PCCM.

- **Perot G.P., Inc. ("Perot G.P.")** is a Texas corporation. It is a general partner of Petrus Securities, L.P.

---

[1] Defs.' App. at 93 (Private Placement Memorandum).

- **Petrus Securities, L.P. ("Petrus")** is a Texas limited partnership. It is a closed fund for Perot family investments, and it had a direct ownership interest in the Foreign Fund. Its general partners are Perot Investments and Perot G.P.

- **Steven L. Blasnik** has the following roles in the relevant entities:

    o Chief Risk Officer, manager, and director of the Foreign Fund

    o President and sole manager of PCCM

    o President and sole manager of Parkcentral Capital

    o Sole manager of Perot Management

    o President and sole director of Perot Investments

    o President and director of Perot G.P.

- **Peter M. Karmin** is the Head of Trading for the Foreign Fund and PCCM, and the Private Placement Memorandum ("PPM"), which was circulated to potential investors, identifies Karmin as a principal and key employee of PCCM and Head of Trading of Perot Investments.[2]

Parkcentral, the Foreign Fund, Parkcentral Capital, and PCCM are not defendants.

According to the Complaint, the Foreign Fund was formed in 2002 to provide outside investors access to the Perot family's money management team and their proprietary trading strategies. Prospective investors reviewed the confidential PPM, which contained detailed information about, and associated risks of, becoming a limited partner in Parkcentral.[3] Each Plaintiff then executed a Subscription Agreement and became a limited partner in Parkcentral.[4] By executing the Subscription Agreement, Plaintiffs agreed to the terms of the Limited Partnership Agreement, which governed the relationship between PCCM and Parkcentral's

---

[2] *Id.* at 94.
[3] *Id.* at 80-122.
[4] *Id.* at 2-34.

limited partners.[5]  The Subscription Agreement and PPM limited the investment opportunity to accredited investors, who were to invest at least $5,000,000.[6]  Plaintiffs completed Purchaser Suitability Questionnaires to verify that they had knowledge and experience in financial and business matters that made them capable of evaluating the merits and risks of the investment.[7]  A natural person who invested must have been a "qualified purchaser" as defined in Section 2(51)(A) of the Investment Company Act of 1940[8] or a "knowledgeable employee" (or a foreign citizen) pursuant to Commodity Futures Trading Commission ("CFTC") Regulation 4.7.[9]  A non-natural person who invested must have been a "qualified eligible person" as defined in CFTC Regulation 4.7[10] and an "accredited investor" (or a foreign citizen) as defined in the Securities Act of 1933.[11]

The PPM stated that the Fund used sophisticated trading methods and risk management controls.[12]  According to the Complaint, the Due Diligence Questionnaire ("DDQ")[13] stated that investments would be diversified and that the worst case loss estimate for any single strategy would not exceed 5% of the Foreign Fund's net asset value.  The DDQ allegedly stated that the Fund's managers would conduct an exhaustive analysis of each potential investment, that the Fund would maintain large amounts of cash, and that the manager of the Fund would exit a position if the long term attractiveness of an investment were jeopardized.[14]  However, the PPM stated that the general partner of the Fund, PCCM, had the freedom to concentrate in a limited

---

[5] *Id.* at 14, 38.

[6] *Id.* at 3, 10, 81, 86.  PCCM could permit a lower minimum investment in special cases and presumably did so for Plaintiff Mullen.  *Id.* at 3.

[7] *Id.* at 10.

[8] 15 U.S.C. § 80a-2(51)(A).  As described in greater detail in Section 2(51)(A), a natural person who is a "qualified purchaser" generally owns at least $5,000,000 in investments.

[9] Defs.' App. at 10.  The term "knowledgeable employee" is defined in 17 C.F.R. § 270.3c-5.

[10] *See* 17 C.F.R. § 4.7.

[11] Defs.' App. at 10.  The term "accredited investor" is defined in Rule 501(a) of the Securities Act of 1933.  17 C.F.R. § 230.501(a).

[12] Defs.' App. at 91-92.

[13] The DDQ is not in the appendices.

[14] Compl. at ¶¶ 35-38.

4

number of investments, and there was no internal limit on the leverage the Fund could assume.[15] Although Plaintiffs contend that the DDQ stated that the Fund would be trading *pari passu*[16] with Petrus, the PPM stated that Petrus would pursue certain positions that the Fund would not.[17]

Plaintiffs assert that the Foreign Fund's positions were not hedged, which exposed the Fund to higher risk than was represented to investors. A March 2, 2007 letter allegedly told Plaintiffs that the Fund was pursuing a "credit arbitrage" strategy with respect to its investments in commercial mortgage-backed securities ("CMBS").[18] Monthly and quarterly reports prepared by PCCM represented that the Fund was pursuing a hedged investment in the spread between a long position in AAA-rated CMBS and a short position in lesser grade A/BBB CMBS.[19] However, Plaintiffs assert that the Fund did not hedge its positions, and instead pursued a highly leveraged open-long position in AAA CMBS, which made the Fund dependent on the value of AAA CMBS. In November 2008, the AAA-rated positions in the CMBS market were devalued by 10%, and the Fund then incurred a $2-3 billion loss. Plaintiffs allege that those huge losses would not have occurred had the long position been hedged, as PCCM allegedly represented it would be in periodic reports.

Plaintiffs bring a class action under Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of those investors who purchased Parkcentral limited partnership interests as of July 1, 2007 and who still held them in November 2008.[20] Plaintiffs assert in Count I of the Complaint a breach of fiduciary duty by all Defendants. Count II alleges that (a) the Perot Entities assisted and/or

---

[15] Defs.' App. at 91, 98.

[16] The same securities in an equal proportion.

[17] Defs.' App. at 93. Petrus did not lose its full net asset value. Compl. at ¶ 43.

[18] This letter is excerpted in the Complaint at Paragraph 46.

[19] Compl. at ¶¶ 55-56. The Complaint defines a "hedge" as "a position established in [a] security to equally offset [an] opposite position in a related security, such that the hedge minimizes exposure to changes in the value of the subject transaction." Id. at ¶ 44. The "credit arbitrage" strategy was short in the credit spread between AAA CMBS and the London Interbank Offered Rates ("LIBOR") swap rate and long in the credit spread between the lower-rated A/BBB CMBS and LIBOR. *Id.* at ¶ 46.

[20] Compl. at ¶ 96.

encouraged Blasnik and Karmin's breaches of fiduciary duty and (b) Karmin assisted and/or participated in Blasnik's breach of fiduciary duty. Count III seeks to (a) impose joint enterprise liability on all Defendants, (b) impose agency and respondeat superior liability upon the Perot Entities for the acts of Blasnik and Karmin, and (c) pierce the corporate veil of The Perot Family Trust. Count IV seeks exemplary damages as to all Defendants.

### *Legal Standard*

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[21] While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[22] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[23] Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[24]

Because Plaintiffs' claims sound in fraud, Fed. R. Civ. P. 9(b) pleading standards apply.[25] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Rule 9(b) requirements are strict, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state

---

[21] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).
[22] *Id.* at 1949-50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[23] *Twombly*, 550 U.S. at 570.
[24] Fed. R. Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950. There is no dispute that the Court may consider the PPM, Subscription Agreement, Limited Partnership Agreement, and reports to Parkcentral's limited partners, which are attached to the Motions to Dismiss, referred to in the Complaint, and central to Plaintiffs' claims. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).
[25] *See Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056-O, 2009 WL 4884426, at *4-5 (N.D. Tex. Dec. 16, 2009) (applying Rule 9(b) to a breach of fiduciary duty claim); Compl. at ¶ 125 ("All entities engaged in a sham to perpetrate a fraud on plaintiffs and the other members of the proposed Class.").

when and where the statements were made, and explain why the statements were fraudulent."[26] At a minimum, the "who, what, when, where, and how" of the fraud must be laid out.[27]  Rule 9(b) requirements must be met as to each defendant.[28]  It is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another.[29]  Allegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and "plaintiffs must set forth *specific facts* supporting an inference of fraud."[30]  Although Blasnik and Karmin were employed by several Perot Entities, it is well established that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."[31]

## *Perot Entities' Motion to Dismiss*

## I. Choice of Law

In a diversity action, "a federal court must apply the choice of law rules of the state in which the district court where the complaint was filed sits."[32]  Texas choice of law rules follow the "internal affairs doctrine," so that the laws of the state of formation govern the internal affairs of an entity, which include "(1) the rights, powers, and duties of its governing authority, governing persons, officers, owners, and members; and (2) matters relating to its membership or

---

[26] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).
[27] *WMX Techs., Inc.*, 112 F.3d at 178.
[28] *See Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Senior Living Props., LLC v. Admiral Ins. Co.*, No. 3:03-CV-1634-G, 2003 WL 22995195, at *1 (N.D. Tex. Oct. 17, 2003).
[29] *See Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001).
[30] *Litson-Gruenber*, 2009 WL 4884426, at *4 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)) (emphasis in original).
[31] *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997).
[32] *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 386 n.7 (5th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

ownership interests."[33]  The laws of the state of formation also apply to the "liability of an

owner, a member, or a managerial official of the entity in the capacity as an owner, a member, or

a managerial official."[34]  Breach of fiduciary duty claims concern the internal affairs of an

entity.[35]  Therefore, Delaware law applies to the evaluation of the claims against Perot

Investments, and Texas law applies to the evaluation of the claims against the Texas entities, The

Perot Family Trust, Perot Management, Perot G.P., and Petrus.[36]

Plaintiffs allege that Blasnik and Karmin owed fiduciary duties to Parkcentral's limited

partners by virtue of their positions at PCCM, the general partner of Parkcentral.  Texas choice

of law rules apply the law of the state of formation to an entity's governing persons and

governing authority.[37]  A "governing person" is a "person serving as part of the governing

authority of an entity", and the "governing authority" is "a person or group of persons who are

entitled to manage and direct the affairs of an entity . . . ."[38]  Blasnik was the President and sole

manager of PCCM, and Karmin was the Head of Trading of PCCM.  In these capacities, Blasnik

---

[33] TEX. BUS. ORGS. CODE ANN. §§ 1.102, 1.105; *see Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000); *Enigma Holdings v. Gemplus Int'l. S.A.*, No. 3:05-CV-1168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006).  The "internal affairs doctrine" was previously codified at TEX. BUS. CORP. ACT ANN. art. 8.02, which expired on Jan. 1, 2010.  *See Phillips v. United Heritage Corp.*, No. 10-08-00161-CV, 2010 WL 2109132, at *11 n.5 (Tex. App.— Waco May 26, 2010, no pet. h.) ("All pre-[Business Organization] Code statutes, including articles 8.02(A) and 2.21(A) of the [Texas Business Corporation Act], expired on January 1, 2010.  Therefore, the Business Organizations Code now applies to all business entities, regardless of when such entities were formed.") (citing *In re HRM Holdings, LLC*, 421 B.R. 244, 246 (Bankr. N.D. Tex. 2009)).
[34] TEX. BUS. ORGS. CODE ANN. § 1.104.
[35] *See 122261 Fondren, LLC v. Riverbank Realty GP, LLC*, No. H-09-4074, 2010 WL 1741071, at *2-3 (S.D. Tex. Apr. 29, 2010); *ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 74 n.14 (S.D. Tex. 2007); *Madison P'ship Liquidity Investors 31, LLC v. USAA Props. III, Inc.*, No. SA98CA324, 1998 WL 1782544, at *2 (W.D. Tex. Sept. 28, 1998) ("The Texas legislature has therefore made clear that the law of the incorporating state, in this case Delaware law, governs the plaintiff's state law claims for breach of fiduciary duty and breach of Partnership Agreement, which are clearly internal affairs."); *Pride Int'l., Inc. v. Bragg*, 259 S.W.3d 839, 848 (Tex. App.— Houston [1st Dist.] 2008, no pet.) ("Because Pride is incorporated in Delaware, Delaware law governs Pride's breach of fiduciary duty claim."); *see, e.g., Hollis*, 232 F.3d at 465-66 (applying Nevada law with respect to a breach of fiduciary duty claim).
[36] *See generally In re The Heritage Org., L.L.C.*, 413 B.R. 438, 510 (Bankr. N.D. Tex. 2009) ("Since Heritage and most of the Entity Defendants were formed in Delaware, the Court will apply Delaware law, except as to FMS (where Texas law applies) and Kornman Associates (where Tennessee law applies).").
[37] TEX. BUS. ORGS. CODE ANN. § 1.105.
[38] TEX. BUS. ORGS. CODE ANN. §§ 1.002(35), 1.002(37).

and Karmin allegedly managed and directed the affairs of Parkcentral, and thus are considered its governing persons under Texas law.[39]  Because Parkcentral is a Delaware limited partnership, Blasnik and Karmin are subject to Delaware law on the breach of fiduciary duty claims against them.[40]

## II.  Breach of Fiduciary Duty (Count I)

Plaintiffs' breach of fiduciary duty claims appear to be based on alleged mismanagement, non-disclosure, and misrepresentation.  Plaintiffs allege that the Foreign Fund would have had a large positive value if its stated trading strategies and risk management standards had been followed, and that the failure of the Fund to follow those strategies and standards caused its total loss of value.[41]  The non-disclosure and misrepresentation contentions allege that Plaintiffs held their investments in the Fund as a result of the Defendants' omissions and misrepresentations in periodic reports, until the Fund collapsed.[42]  The Supreme Court of Texas recently characterized such a claim as a "holder" claim, which it described in this way:

> In a "holder" claim, the plaintiff alleges not that the defendant wrongfully induced the plaintiff to purchase or sell stock, but that the defendant wrongfully induced the plaintiff to continue holding his stock.  As a result, the plaintiff seeks damages for the diminished value of the stock, or the value of a forfeited opportunity, allegedly caused by the defendant's misrepresentations.[43]

### A.  Direct and Derivative Claims

Because Plaintiffs were limited partners in Parkcentral, a Delaware entity, the Court looks to Delaware law to determine whether their claims against all Defendants are direct or

---

[39] Compl. at ¶¶ 15, 27, 31.
[40] *See generally Lewis v. Knutson*, 699 F.2d 230, 235 (5th Cir. 1983) (applying Delaware law to the fiduciary duties owed by a Delaware corporation's controlling shareholders).
[41] Compl. at ¶¶ 47, 48, 53, 59, 64.
[42] *Id*. at ¶¶ 5-7, 86, 111.
[43] *Grant Thornton LLP v. Prospect High Income Fund*, --- S.W.3d ---, No. 06-0975, 2010 WL 2636124, at *11 (Tex. July 2, 2010).

derivative.[44]  In *Tooley*, the Delaware Supreme Court held that whether a claim is direct or derivative turns solely on the following questions:  "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[45]  A court conducts the following analysis:

> [A] court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.[46]

When determining whether claims against a limited partnership are direct or derivative, the analysis is substantially the same as that applied to claims against a corporation, and a court may rely on both corporate and partnership law.[47]

### 1.  Mismanagement Claim as to all Defendants

Delaware courts have found mismanagement to be a derivative claim under the *Tooley* test.[48]  Here, the alleged failure to comply with proper internal controls caused Parkcentral to lose its value, which led to the limited partners' injuries.  If the Court determined that Blasnik and Karmin breached their fiduciary duties by mismanagement, any recovery would go to the

---

[44] *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384 (5th Cir. 2005) ("This court looks to the Delaware law, including the Delaware Supreme Court's recent opinion in *Tooley*, to decide whether Smith's claims are direct or derivative."); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, No. 07 Civ. 2618, 2010 WL 1010012, at *19 (S.D.N.Y. Mar. 15, 2010) ("Because the Fund was incorporated in Delaware, the Court applies Delaware law to determine whether the suit may be brought directly on behalf of investors or whether it must be brought derivatively."); *Hogan v. Baker*, No. 3:05-CV-0073-P, 2005 WL 1949476, at *2 (N.D. Tex. Aug. 12, 2005) ("To determine whether a claim is direct or derivative, the Court must first look to the law of the state in which the fund was incorporated. . . . Because the Funds are organized as Delaware statutory trusts, Delaware law governs.").

[45] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

[46] *Id.* at 1039.

[47] *See Albert v. Alex Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005).

[48] *See, e.g.*, *Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009); *Alex Brown*, 2005 WL 2130607, at *13.

party harmed, namely Parkcentral.[49]  Because such a claim is derivative, Delaware law requires that the limited partners either make a demand on the general partner, PCCM, or allege in the Complaint why such a demand was not made.[50]  Plaintiffs have not made a demand on PCCM or pled the futility of making a demand, and such total failure is a sufficient basis for dismissing a derivative claim.[51]  To the extent Plaintiffs intend to assert a mismanagement claim, Plaintiffs must replead to show that they made a demand on PCCM or the futility of doing so.

### 2. Holder Claim as to all Defendants

Delaware law allows holder claims to be pursued.[52]  In *Alex Brown Management Services*, investors asserting such a claim alleged that fund managers breached their fiduciary duties to disclose material information.[53]  The Delaware Chancery Court noted that non-disclosure/misrepresentation claims are generally direct, not derivative, claims.[54]  Applying *Tooley*, the *Alex Brown* court found that non-disclosure and misrepresentation did not harm the funds, but instead harmed investors who lost the opportunity to withdraw their investments or sue to redeem their interests.[55]  Since the investors, not the funds, would receive any recovery,

---

[49] *See Thornton*, 2009 WL 426179, at *3 ("[T]he Plaintiffs complain of quintessential director mismanagement and any recovery would be for the benefit of the corporate entity, and the Court finds these claims to be derivative."); *Agostino v. Hicks*, 845 A.2d 1110, 1123 (Del. Ch. 2004) (noting that a mismanagement claim "represents a direct wrong to the corporation that is indirectly experienced by all shareholders" and is therefore "entirely derivative in nature.") (quoting *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988)); *see, e.g., Maounis*, 2010 WL 1010012, at *20 ("The first allegation-that Defendants broke fiduciary duties to [Plaintiff] by failing to manage properly the Fund-is, like Plaintiff's gross negligence claims, a classic claim of fund mismanagement that belongs to the Fund, and is therefore derivative.").

[50] *See* DEL. CODE ANN. tit. 6, § 17-1001 (1998) ("A limited partner or an assignee of a partnership interest may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed."); DEL. CODE ANN. tit. 6, § 17-1003 (1998) ("In a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort.").

[51] *See* Fed. R. Civ. P. 23.1; *Hicks*, 845 A.2d at 1117; *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 17 (Del. Ch. 1992).

[52] *See Maounis*, 2010 WL 1010012, at *17 ("New York, Delaware, and California recognize the right to pursue 'holder' claims . . . ."); *In re Oracle Corp.*, 867 A.2d 904, 932 n.118 (Del. Ch. 2004) (recognizing "holder" claims).

[53] 2005 WL 2130607, at *6, 12.

[54] *Id.* at *12.

[55] *Id.*

the court held that the plaintiffs could assert such a claim directly.[56]  The court also held that, to

assert a non-disclosure claim, the defendant must have a specific duty to disclose.[57]

Here, the alleged non-disclosure/misrepresentation as to the nature of the Foreign Fund's

positions in CMBS hurt the Plaintiffs, not Parkcentral.  PCCM had a specific contractual duty to

accurately disclose the Foreign Fund's trading strategies in the quarterly reports, leverage

reports, and other information it furnished to Plaintiffs after they invested.[58]  In contrast to a

publicly traded company, where the disclosure of unfavorable financial information could lower

its stock price, Parkcentral depended instead on the success of the Foreign Fund's trading

strategies.[59]  The alleged non-disclosure/misrepresentation harmed Plaintiffs, who alleged they

would have withdrawn their investments had they known that the Fund's positions were highly

leveraged, and not hedged.  Plaintiffs can show an injury without simultaneously proving an

injury to Parkcentral, and it is they, not Parkcentral, who would benefit from the recovery of

some portion of their investments.[60]

---

[56] *Id.* at *13.

[57] *Id.* at *3; *see Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1181 n.54 (Del. Ch. 2006).

[58] Compl. at ¶¶ 46, 48, 64, 69, 73-74, 77; *see also* Defs.' App. at 64-66 (Limited Partnership Agreement) ("As soon as reasonably practicable after the end of each Fiscal Quarter, the General Partner shall cause to be delivered to each Person who was a Partner at any time during such Fiscal Quarter a report setting forth (i) an unaudited statement of the rate of return of the Partnership for such Fiscal Quarter and (ii) such other financial reports and information as the General Partner may deem appropriate."), 87 (PPM) ("Limited Partners receive unaudited monthly performance reports, quarterly risk analysis statements, annual audited financial statements and necessary federal tax information regarding the Fund."); *see generally O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 916 (Del. Ch. 1999) ("Corporate fiduciaries can breach their duty of disclosure under Delaware law . . . by making a materially false statement, by omitting a material fact, or by making a partial disclosure that is materially misleading.").

[59] *See Draper Fisher Jurvetson Mgmt. Co. v. I-Enter. Co.*, No. C 03-1561 MMC, 2004 WL 2944055, at *7 (N.D. Cal. Dec. 15, 2004) (finding that breach of a contractual reporting provision "would injure only the partners, and not the partnership itself, as the financial condition of the partnership exists regardless of whether it is reported to the limited partners."); *cf. Waste Mgmt.*, 407 F.3d at 385 (finding that misrepresentation was a derivative claim when disclosure of previously concealed financial information caused a decline in the company's share price, indirectly injuring all shareholders as a result of their stock ownership).

[60] *See Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 153-54 (Del. Ch. 2003) (considering the unique context of a limited partnership and holding that a financial statement "was contractually required to be provided to the partners and any claims that it was incomplete, or materially false or misleading would state a direct claim."); *see also Pozez v. Ethanol Capital Mgmt., L.L.C.*, No. 07-CV-00319-TUC-CKJ, 2009 WL 2176574, at *11 (D. Ariz. July 21, 2009) (concluding that the failure to fulfill reporting and communication obligations is a breach resulting in direct harm to the plaintiffs).

Defendants rely on *San Diego County Employees Retirement Ass'n v. Maounis*, a Southern District of New York decision purportedly applying Delaware law, to argue that Plaintiffs' non-disclosure/misrepresentation claim is derivative.[61]  In *Maounis*, a hedge fund took large positions in the natural gas market and collapsed after natural gas prices fell.[62]  An investor alleged that the fund misrepresented its positions and failed to disclose that it had ceased operating as a multi-strategy fund with sound risk controls, and that the investor relied on the representations in making and holding its investment.[63]  Without a showing that the defendants aimed their misconduct specifically at the investor, uniquely or with any particular animus, the court determined the misrepresentation claim to be derivative.[64]

To state a direct claim under Delaware law, a plaintiff need not allege that he suffered a "special injury" distinct from that suffered by other shareholders.[65]  If the import of *Maounis* is to require a plaintiff to suffer a special injury to plead a direct claim under Delaware law, the Court rejects that analysis, as it was expressly disavowed by *Tooley*.[66]  Although *Maounis* cites a case that required a showing of animus against the plaintiff in an inapposite context,[67] the case was later overruled by the Delaware Supreme Court.[68]  Finding no other authority that requires a special injury or unique animus against a plaintiff, the Court concludes that no special injury or animus requirement applies to Plaintiffs' holder claim under Delaware law and that Plaintiffs may assert that claim directly.

---

[61] 2010 WL 1010012.
[62] *Id.* at *9.
[63] *Id.* at *1-6.
[64] *Id.* at *20.
[65] *See Waste Mgmt.*, 407 F.3d at 384; *Tooley*, 845 A.2d at 1039.
[66] *See Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, at *9 (Del. Ch. Feb. 24, 2010).
[67] *See Prod. Res. Group v. NCT Group*, 863 A.2d 772, 798 (Del. 2004); *see also Big Lots*, 922 A.2d at 1180 (noting that *Production Resources* involved "unusual allegations" and "relied heavily on its unique facts.").
[68] *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007).

## B. Fiduciary Duty of Perot Investments under Delaware Law

Under Delaware law, a breach of fiduciary duty claim requires proof that a fiduciary duty existed and that the defendant breached that duty.[69]  Plaintiffs claim that Perot Investments owed them a fiduciary duty because it allegedly controlled PCCM.[70]  Plaintiffs also assert that they had a special relationship of trust with Perot Investments.

### 1. Control Exercised by Perot Investments

Because the Delaware Supreme Court has not spoken to the fiduciary duties owed by an entity that controls a general partner, this Court must "determine as best it can, what the highest court of the state would decide."[71]  A federal court ordinarily follows an intermediate appellate court's decision, unless convinced by other persuasive information that the state supreme court would decide otherwise.[72]

Plaintiffs derive Perot Investments' fiduciary liability from the line of Delaware cases beginning with *In re USACafes, L.P. Litigation*.[73]  The Delaware Chancery Court examined *USACafes* and its progeny in *Cargill, Inc. v. JWH Special Circumstance, LLC*, 959 A.2d 1096 (Del. Ch. 2008), explaining that affiliates which exercise control over a general partner may owe the same fiduciary duty of loyalty the general partner owes to limited partners.[74]  Although *Cargill* limited its discussion to the duty of loyalty, in *Bay Center*, the Chancery Court narrowed the scope of duties owed by controlling affiliates, noting that "*USACafes* suggests that

---

[69] *Beard Research, Inc. v. Kates*, No. 1316-VCP, 2010 WL 1644177, at *17 (Del. Ch. Apr. 23, 2010).
[70] The breach of fiduciary duty claim against Blasnik and Karmin is discussed in the context of their Motion to Dismiss.
[71] *Hollis*, 232 F.3d at 465.
[72] *See Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659, 662-63 (W.D. Tex. 2006) (citing *Barfield v. Madison Cnty.*, 212 F.3d 269, 272 (5th Cir. 2000)).
[73] 600 A.2d 43 (Del. Ch. 1991).  The cases that follow *In re USACafes* include:  *James River-Pennington, Inc. v. CRSS Capital, Inc.*, No. 13870, 1995 WL 106554 (Del. Ch. Mar. 6, 1995); *Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999); *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*, No. 16630-NC, 2001 WL 1641239 (Del. Ch. Dec. 4, 2001); *In re Primedia Inc. Deriv. Litig.*, 910 A.2d 248 (Del. Ch. 2006); *Cargill, Inc. v. JWH Special Circumstance, LLC*, 959 A.2d 1096 (Del. Ch. 2008); and *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009).
[74] 959 A.2d at 1119-1120, 1121 n.103.

controlling affiliates do not have the full range of traditional fiduciary duties . . . ."[75]  The *Bay Center* court further commented that cases applying *USACafes* have not ventured beyond the duty "not to use control over the partnership's property to advantage the corporate director at the expense of the partnership."[76]  To pursue a breach of fiduciary duty claim against Perot Investments, Plaintiffs must allege specific facts that lead to a reasonable inference that Perot Investments exercised control over Parkcentral in connection with the alleged non-disclosures/misprepresentations to benefit itself at Parkcentral's expense.[77]

Plaintiffs allege that Perot Investments provided "management services" to PCCM, including "all management services, IP, employees, and infrastructure."[78]  Defendants contend that Perot Investments actually provided only "middle and back office administrative services" by contract.[79]  The PPM states that Perot Investments manages and supports the Foreign Fund's trading strategies, and allows use of Perot Investments' proprietary analytics and portfolio systems.[80]  However, the Complaint does not allege specific facts showing Perot Investments' control over Parkcentral in connection with the alleged non-disclosures/misrepresentations in the reports to limited partners.  Perot Investments was compensated under its contract with PCCM, and there is no allegation that its compensation depended on fees paid by investors, nor that it benefited itself at the expense of Parkcentral's limited partners.  Therefore, the Complaint provides no basis to conclude that Perot Investments owed Plaintiffs a fiduciary duty under *USACafes* and its progeny.

---

[75] 2009 WL 1124451, at *9.
[76] *Id.* at *10.
[77] *Id.*; *Cargill*, 959 A.2d at 1121.
[78] Compl. at ¶ 10; Pls.' Op. to Perot Br. at 8.
[79] Perot Br. at 6 n.4.
[80] Defs.' App. at 94.

### 2. Special Relationship of Trust in Perot Investments

Under Delaware law, a "fiduciary relationship arises in a situation where one person reposes special trust in, and reliance on, the judgment of another, or where a special duty exists on the part of one person to protect the interests of another."[81]  In such a circumstance, one party generally relies on the other's superior knowledge or expertise.[82]  In *Addy v. Piedmonte*, the Delaware Chancery Court concluded that an investor's accredited or institutional status negated the existence of a special relationship of trust, and held that "[b]argained-for commercial relationships between sophisticated parties do not give rise to fiduciary duties."[83]  Here, the Subscription Agreement and PPM limited the investment opportunity to accredited/qualified investors, who had knowledge of and experience in financial and business matters that made them capable of evaluating the merits and risks of the investment.[84]  Plaintiffs were expressly told in the Subscription Agreement and PPM that the investment was speculative and involved a substantial risk of loss, even of the entire investment.[85]  The commercial relationship between these sophisticated parties did not give rise to a special relationship of trust between Plaintiffs and Perot Investments, which was not a party to the documents that Plaintiffs signed and with which Plaintiffs had no direct contact.  Therefore, Plaintiffs' breach of fiduciary duty claim is dismissed as to Perot Investments, with leave to replead.

### C.  Holder Claim against The Perot Family Trust, Perot Management, Perot G.P., and Petrus under Texas Law

Count I of the Complaint asserts a holder claim against the Texas entities, The Perot Family Trust, Perot Management, Perot G.P., and Petrus.  The Supreme Court of Texas recently

---

[81] *Forsythe v. ESC Fund Mgmt. Co.*, No. 1091-VCL, 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007).
[82] *Addy v. Piedmonte*, No. 3571-VCP, 2009 WL 707641, at *16 (Del. Ch. Mar. 18, 2009).
[83] *Id.* at *17.
[84] Defs.' App. at 3, 10, 81, 86.
[85] *Id.* at 6, 81.

clarified the status of holder claims under Texas law.  In *Grant Thornton LLP v. Prospect High Income Fund*, the Supreme Court granted a petition for review to Grant Thornton on the holder claims of the plaintiffs, bond and hedge fund investors.[86]  Plaintiffs alleged that Grant Thornton made material misrepresentations in its audit reports for Epic Resorts' bonds.[87]  These reports were publicly available, and the Epic bonds were registered with the Securities and Exchange Commission and sold on the open market.[88]  Plaintiffs alleged that, but for Grant Thornton's misrepresentations, "they would have sold their bonds sooner, when doing so would have been more profitable, or they would have forced Epic into bankruptcy sooner, when it had more assets to liquidate."[89]  The Supreme Court of Texas held that a holder claim that does not involve a direct communication between the plaintiff and the defendant is subject to dismissal.[90]  Examples the Court gave of "direct communications" are in-person meetings, telephone conversations, and e-mail messages.[91]  Misrepresentations in publicly available documents, such as Grant Thornton's audits, were held not to constitute direct communications.[92]  The Supreme Court of Texas left open the prospect that holder claims involving specific, direct communications are actionable under Texas law, but declined to permit a holder claim in the absence of any direct communication.[93]  Because the plaintiffs had no direct communication with Grant Thornton, the Court granted Grant Thornton judgment on the holder claims.[94]

Plaintiffs allege that the Defendants made material misrepresentations and omissions in PCCM's monthly, quarterly, and other periodic reports.  In contrast to the bonds in *Grant*

---

[86] 2010 WL 2636124, at *1.
[87] *Id*. at *2.
[88] *Id.* at *1.
[89] *Id.* at *10.
[90] *Id.* at *13.
[91] *Id.* at *12.
[92] *Id.* at *14.
[93] *Id.*
[94] *Id.*

*Thornton*, the Parkcentral investments were not registered with the SEC. PCCM distributed the reports to Parkcentral's limited partners. However, the Perot Entities had no apparent role in the preparation of the periodic reports.[95] Although Defendants loosely allege that "[r]epresentatives for the Fund, defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus, including defendant Blasnik, told prospective investors in the Fund that H. Ross Perot Sr. approved the Fund's investments including risk, leverage, investment strategy and positions," Plaintiffs do not allege that any such representation induced them to hold their investments.[96] Because Plaintiffs have not specifically alleged any material, direct communication by The Perot Family Trust, Perot Management, Perot G.P., or Petrus, Plaintiffs' breach of fiduciary duty claim is dismissed as to those entities, although Plaintiffs may reassert this claim if they have a good faith basis to do so.

## III. Aiding and Abetting ("Assisting and Encouraging") as to the Perot Entities (Count II)

Plaintiffs allege that the Perot Entities assisted and/or encouraged a breach of fiduciary duty by Blasnik and Karmin. Under Texas and Delaware law, to pursue such a claim, Plaintiffs must show that the Perot Entities knowingly participated in such a breach.[97] Although the Complaint contains a number of vague allegations that lump all Defendants together,[98] it does not allege facts sufficient to support an inference that any Perot Entity knowingly participated in Blasnik and Karmin's breaches of fiduciary duty.

---

[95] The periodic reports were prepared on PCCM's letterhead.

[96] Compl. at ¶ 128. *See generally Grant Thornton*, 2010 WL 2636124, at *10-12 (describing the element of inducement in a holder claim).

[97] *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); *Blum*, 2010 WL 629850, at *15; *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.); *see generally Woloshen v. State Farm Lloyds*, No. 3:08-CV-0634-D, 2008 WL 4133386, at *2 n.3 (N.D. Tex. Sept. 2, 2008) (noting that Texas recognizes the tort of aiding and abetting a breach of fiduciary duty); *Juhl v. Airington*, 936 S.W.2d 640, 643-45 (Tex. 1996).

[98] *See, e.g.*, Compl. at ¶¶ 84, 91, 92 ("Defendants Blasnik's and Karmin's acts and/or omissions were directed by, controlled, approved, adopted and/or ratified by defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus."), 110, 114-15, 123-24.

Plaintiffs allege that Blasnik had monthly meetings with H. Ross Perot Sr., during which H. Ross Perot Sr. approved and directed Blasnik's investment strategy and decisions, "including decisions to disregard the [Foreign] Fund's risk management controls, as well as assume massive leverage and hold the long AAA CMBS position without any significant hedge."[99] Plaintiffs assert that H. Ross Perot Sr. acted in his capacity as "an agent, representative and/or controlling stakeholder in defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus."[100] However, Plaintiffs pled no facts showing H. Ross Perot Sr.'s relationship with any Perot Entity, and the fact that certain Perot Entities share his surname is an insufficient basis to conclude that he acted as their agent, representative, or controlling stakeholder. Furthermore, Plaintiffs have not alleged H. Ross Perot Sr.'s control over the alleged misrepresentations and omissions in PCCM's reports. This claim is therefore dismissed as to the Perot Entities, but Plaintiffs are given leave to specifically identify each Defendant's knowing participation. If Plaintiffs assert that H. Ross Perot Sr. aided and abetted the breaches of fiduciary duty as a representative of any Perot Entity, they must specifically plead his relationship with each Perot Entity and how his alleged control over the Foreign Fund was in furtherance of such relationship.

## IV. Vicarious Liability (Count III)

### A. Joint Enterprise Liability as to all Defendants

Plaintiffs allege that all Defendants were in a joint enterprise.[101] A finding of joint enterprise liability makes each party an agent of the enterprise, with each agent then becoming liable for the negligent acts of the other enterprise members.[102] To prove a joint enterprise,

---

[99] Compl. at ¶ 129.
[100] *Id.*
[101] *Id.* at ¶¶ 120-21. There is no dispute that Texas law applies to this claim.
[102] *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000).

plaintiffs must show "(1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a common business or pecuniary interest; and (4) an equal right to direct and control the enterprise."[103] The mere coordination of operations and combination of resources in pursuit of the same business purpose is insufficient to impose joint enterprise liability.[104] The third element requires a monetary interest common among members of the group that is "shared without special or distinguishing characteristics."[105] The fourth element requires that each participant have some voice and right to be heard.[106]

Plaintiffs offer a formulaic recitation of the elements of joint enterprise liability devoid of factual support.[107] Plaintiffs pled no facts showing an express or implied agreement among all Defendants, a common purpose among all Defendants, or an equal right to direct and control the enterprise. Plaintiffs' joint enterprise liability claim is dismissed as unsupported by the Complaint, but Plaintiffs are given leave to replead if they can do so in good faith.

### B. Agency and Respondeat Superior as to all Defendants

Plaintiffs allege that "Defendants are vicariously liable through the doctrines of agency, apparent agency, agency by estoppel, [and] respondeat superior for the acts and/or omissions of their agents, employees and/or representatives, including defendants Blasnik and Karmin."[108] These allegations are conclusory and lack specificity.

---

[103] *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002).

[104] *See SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 451-52 (Tex. 2008) (noting that common employees, common offices, centralized accounting, and services rendered by the employees of one corporation on behalf of another corporation are insufficient to establish joint enterprise liability).

[105] *Bramante v. McClain, Sr.*, No. SA-06-CA-0010 OG (NN), 2007 WL 4555943, at *5 (W.D. Tex. Dec. 18, 2007); *see also St. Joseph Hosp.*, 94 S.W.3d at 528 ("Instructing the jury that it may find a joint enterprise based in part on a finding of a 'common business or pecuniary interest' opens to vicarious liability parties who may have business or pecuniary interests in the activities of others, but whose interests in those activities are not held in community with those others because they are not shared without special or distinguishing characteristics.").

[106] *Bramante*, 2007 WL 4555943, at *6.

[107] Compl. at ¶¶ 120-21 ("All defendants were in a joint enterprise because they had (a) an agreement (express or implied); (b) a common purpose to be carried out by the enterprise; (c) a community of pecuniary interest in that common purpose; and (d) an equal right to direct and control the enterprise.").

[108] Compl. at ¶ 122.

To be within the scope of employment, an employee's tortious act must be "[1] within the scope of the employee's general authority [2] in furtherance of the employer's business and [3] for the accomplishment of the object for which the employee was hired."[109]  There is no allegation that Blasnik and Karmin were employees of The Perot Family Trust or Petrus.  Plaintiffs have not raised a reasonable inference that Blasnik and Karmin's breach of fiduciary duty by non-disclosure/misrepresentation was within the scope of their employment at Perot Investments, Perot G.P. and/or Perot Management.  Because Plaintiffs have not pled sufficient facts to state a plausible claim, their agency and respondeat superior allegations are dismissed as to all Defendants, with leave to replead.

## C.  Piercing the Corporate Veil as to The Perot Family Trust under Texas Law

Plaintiffs offer conclusory accusations lacking factual support that lump all Defendants together and merely restate some elements of proof necessary to pierce the corporate veil, without providing necessary factual allegations.[110]  A Texas Appellate Court recently described the statutory requirements to pierce the corporate veil:

> Under Section 21.223(a)(2) of the Texas Business Organizations Code, a shareholder may not be held liable to the corporation or its obligees with respect to any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the shareholder is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.  The liability of a shareholder for a contractual corporate obligation "is exclusive and preempts any other liability imposed for

---

[109] *Anderson v. United States*, 364 F. Appx. 920, 922 (5th Cir. 2010) (unpublished) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)); *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184-VCP, 2008 WL 4057745, at *11 (Del. Ch. Sept. 2, 2008) ("For the agency theory, the factual inquiry includes whether: '(1) the agent ha[s] the power to act on behalf of the principal with respect to third parties; (2) the agent do[es] something at the behest of the principal and for his benefit; and (3) the principal ha[s] the right to control the conduct of the agent.'").

[110] Compl. at ¶ 125 ("At all times relevant, defendant The Perot Family Trust was the alter ego of defendants Perot Investments, Perot Management, Perot G.P. and Petrus.  All entities engaged in a sham to perpetrate a fraud on plaintiffs and the other members of the proposed Class.  Further, defendants Perot Investments, Perot Management, Perot G.P. and Petrus were organized and operated as a mere tool or business conduit of defendant The Perot Family Trust in order to evade its legal obligations.  In the alternative, defendants Perot Investments, Perot Management, Perot G.P. and Petrus were inadequately capitalized with the effect of creating an injustice.").

that obligation under common law or otherwise."  Subsection (b) provides that the statutory limitation on a shareholder's liability under subsection (a) does not protect the shareholder if the obligee demonstrates the shareholder caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the shareholder.[111]

Plaintiffs neither allege that The Perot Family Trust used Parkcentral to perpetrate fraud, nor that Parkcentral perpetrated an actual fraud on the Plaintiffs primarily for the benefit of the Trust. Furthermore, the allegations do not satisfy the elements of an alter ego claim.[112]  The Court therefore dismisses Plaintiffs' claim to pierce the corporate veil against The Perot Family Trust, with leave to replead.[113]

### Blasnik and Karmin's Motion to Dismiss

## I. Breach of Fiduciary Duty under Delaware Law (Count I)

### A. Exculpatory Clause

Delaware law enforces contractual restrictions on a general partner's fiduciary duties:[114]

To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing.[115]

---

[111] *Penhollow Custom Homes, LLC v. Kim*, No. 08-08-00029-CV, 2010 WL 1055107, at *3 (Tex. App.—El Paso Mar. 24, 2010, no pet. h.) (internal citations omitted); *see* TEX. BUS. ORGS. CODE §§ 21.223, 21.224, 21.225.

[112] *Penhollow*, 2010 WL 1055107, at *3 ("As proof of alter ego, a court may consider:  (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate.").

[113] *See, e.g.*, *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008) ("Conclusory allegations of alter ego status will not survive a motion to dismiss.") (quoting *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007)); *cf. Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-CV-1985-B, 2009 WL 1174641, at *5-8 (N.D. Tex. 2009) (finding that detailed allegations satisfied pleading requirements).

[114] *See* DEL. CODE ANN. tit. 6, § 17-1101(c) (2010); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002).

[115] DEL. CODE ANN. tit. 6, § 17-1101(d) (2010).

The parties dispute the meaning of the following provision, which appears in the "Exculpation" section of the Limited Partnership Agreement and also appears in substantially the same form in the PPM:

> [T]o the extent that, at law or in equity, any General Partner Party has duties (including fiduciary duties) and liabilities relating thereto to [Parkcentral] or any Partner, such General Partner Party shall not be liable for monetary or other damages to [Parkcentral] or such Partner for . . . losses sustained or liabilities incurred by the Partnership or such Partner as a result of . . . any act or omission of such General Partner Party, if such General Partner Party acted without fraud, bad faith, gross negligence, or willful misconduct . . . .[116]

Although Plaintiffs contend that this provision expands the Defendants' fiduciary duties, it plainly restricts them.[117] However, a defendant relying on an exculpatory clause must affirmatively raise that defense.[118] Blasnik and Karmin raise the exculpatory clause in their Motion to Dismiss, but the Perot Entities do not.

Under the Limited Partnership Agreement, a "General Partner Party" is PCCM, any affiliate of PCCM, and any "member, partner, shareholder, director, officer, employee or agent of [PCCM] or any such Affiliate."[119] As employees of PCCM, Blasnik and Karmin are General Partner Parties and may be entitled to exculpation. However, Blasnik and Karmin have the burden to establish such a defense by "proving that the plaintiff's complaint - when accepted as

---

[116] Defs.' App. at 66, 96. A limited partner is considered a "Partner." *Id.* at 41.

[117] *See also* DEL. CODE ANN. tit. 6, § 17-1101(f) (2010) (limitation of liability); *Schuss v. Penfield Partners, L.P.*, No. 3132-VCP (DFP), 2008 WL 2433842, at *2, 10 (Del. Ch. June 13, 2008).

[118] *See In re Nantucket Island Assocs. Ltd. P'ship Unitholders Litig.*, No. 17379 NC, 2002 WL 31926614, at *3 (Del. Ch. Dec. 16, 2002) ("To vindicate the statutory purpose behind provisions like § 17-1101(d)(1) of the DRULPA or § 102(b)(7) of the Delaware General Corporation Law, it is critical that defendants be able to assert those defenses in a motion directed to the face of the complaint, such as a motion under Rule 12(b)(6)."); *see also In re PNB Holding Co. Shareholders Litig.*, No. 28-N, 2006 WL 2403999, at *22 n.117 (Del. Ch. Aug. 18, 2006); *see generally Emerald Partners v. Berlin*, 726 A.2d 1215, 1223-24 (Del. 1999) (stating that defendants seeking exculpation under a statutory shield from liability will normally bear the burden of proof as to each of its elements).

[119] Defs.' App. at 40.

true - contains no facts that cast any doubt on the defendant's entitlement to the statutory protection."[120]

The Limited Partnership Agreement does not exculpate grossly negligent or fraudulent conduct.[121] Gross negligence is conduct that "constitutes reckless indifference or actions that are without the bounds of reason."[122] Plaintiffs must articulate facts suggesting a wide disparity between Blasnik and Karmin's conduct and what would have been reasonable conduct.[123] Fraud requires knowledge and intent on the part of Blasnik and Karmin,[124] but a "defendant's state of mind, including its knowledge and intent, need not be pled with particularity but 'may be averred generally.'"[125] At this early stage of this case and without the benefit of discovery, less particularity is required because the Defendants have greater knowledge of the facts.[126]

Plaintiffs aver state of mind generally, alleging that all Defendants intentionally misrepresented the leverage, risk, and liquidity of the Foreign Fund's positions.[127] Plaintiffs assert that Blasnik and Karmin participated in, reviewed, and approved reports to investors that concealed the Foreign Fund's trading strategies.[128] Blasnik and Karmin signed the quarterly reports to investors during the relevant time period, from 2007 to 2008.[129] Plaintiffs have

---

[120] *In re Nantucket*, 2002 WL 31926614, at *3.

[121] Plaintiffs have not asserted causes of action for fraud or gross negligence, and this discussion is limited to Blasnik and Karmin's entitlement to exculpation as to Plaintiffs' breach of fiduciary duty claim.

[122] *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008).

[123] *See In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 750 n.429 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (2006).

[124] *See Addy*, 2009 WL 707641, at *18.

[125] *NAACO Indus. v. Applica Inc.*, No. 2541-VCL, 2009 WL 4981577, at *22 (Del. Ch. 2009) (quoting *Anglo Am.*, 829 A.2d at 158); *see also Litson-Gruenber*, 2009 WL 4884426, at *4; *Alex Brown*, 2005 WL 2130607, at *11 ("While Rule 9(b) provides that 'knowledge . . . may be averred generally,' where pleading a claim of fraud or breach of fiduciary duty that has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pleaded facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it.").

[126] *See NAACO*, 2009 WL 4981577, at *22.

[127] Compl. at ¶ 95.

[128] *Id.* at ¶¶ 36 ("[T]he risk management report that is prepared on a monthly basis by Mr. Blasnik . . . ."), 37, 48, 53-55, 64, 70, 77.

[129] *Id.* at 231 (2007 Q1 Review), 240 (2007 Q2 Review), 250 (2007 Q3 Review), 260 (2007 Q4 Review), 270 (2008 Q1 Review), 281 (2008 Q2 Review), 290 (2008 Q3 Review). *See Magruder v. Halliburton Co.*, No. 3:05-CV-1156-M, 2009 WL 854656, at *7 (N.D. Tex. Mar. 31, 2009) ("Corporate statements can be tied to officers if plaintiffs

therefore sufficiently pled Blasnik and Karmin's fraud and gross negligence in connection with their preparation of periodic reports, to defeat their entitlement to exculpation.

### B. Fiduciary Duty

As explained above, Delaware law allows holder claims to be pursued directly. Under *USACafes* and its progeny, Blasnik and Karmin, by virtue of their positions with PCCM, have a fiduciary duty not to exercise control over Parkcentral's disclosures to benefit themselves at Parkcentral's expense.[130] Plaintiffs suggest that Blasnik and Karmin concealed the Foreign Fund's trading strategy to generate management fees from limited partners who were misled into holding their investments.[131]

PCCM received a management fee of .125% per month of the opening balance of each limited partner's account and an annual profit share of 20% of new net profit with respect to each limited partner's account.[132] Blasnik and Karmin were key employees of PCCM and the Foreign Fund, who helped generate over $300 million in management and incentive fees for PCCM.[133] In exchange for the services provided by Perot Investments, PCCM paid fees to Parkcentral Partners, L.P., whose limited partners include Blasnik and Karmin.[134] However, Perot Investments was compensated for its assets and services under contract, and there is no allegation that Perot Investments' compensation depended on PCCM's management fees, nor that Blasnik and Karmin received management fees as limited partners in Parkcentral Partners.[135] In any case, Defendants stood to gain much more from the Fund's success than its failure. The

---

allege they signed the documents on which the statements were made or allege adequately their involvement in creating the documents.") (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006)).
[130] *See Bay Ctr.*, 2009 WL 1124451, at *1, 9-10 (denying the motion to dismiss a breach of fiduciary duty claim against an individual who was neither a member or officer of a limited liability company, but nevertheless exercised control over that company for his personal benefit); *Bigelow*, 2001 WL 1641239, at *8-9.
[131] Pls.' Op. to Blasnik and Karmin Br. at 9-10.
[132] Defs.' App. at 87.
[133] *Id.*; Compl. at ¶ 89.
[134] Compl. at ¶ 26.
[135] Defs.' App. at 94.

Plaintiffs, PCCM, and any entity or individual that received a portion of PCCM's fees, benefitted by higher account balances and new net profits.  Because Plaintiffs have neither pled sufficient facts to state a plausible claim nor raised more than a "sheer possibility" that Blasnik and Karmin exercised control over Parkcentral to benefit themselves at Parkcentral's expense, Plaintiffs' breach of fiduciary duty claim is dismissed, with leave to replead.[136]

## II.  Aiding and Abetting ("Assisting and/or Participating") as to Karmin under Delaware Law (Count II)

In the event the Court finds that Karmin did not have direct liability to the Plaintiffs, Plaintiffs alternatively allege that Karmin assisted and/or participated in Blasnik's breach of fiduciary duty.[137]  To state a claim for aiding and abetting breach of fiduciary duty under Delaware law, Plaintiffs must show:  "(1) the existence of a fiduciary relationship; (2) the fiduciary breached [his] duty; (3) a defendant, who is not a fiduciary, knowingly participated in the breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary."[138]  Because Plaintiffs have not sufficiently stated a claim that Blasnik breached his fiduciary duties, their assisting and participating claim must be dismissed, with leave to replead.

*Conclusion*

For the reasons stated above, the Motion to Dismiss of The Perot Family Trust, Hill Air Company I, L.L.C., Perot Management G.P., L.L.C., Perot G.P., Inc., and Petrus Securities, L.P is **GRANTED**, and the Motion to Dismiss on Behalf of Steven L. Blasnik and Peter M. Karmin is **GRANTED**.  Plaintiffs are granted leave to replead their claims of breach of fiduciary duty by non-disclosure (holder claims) as to all Defendants, assisting and encouraging as to the Perot

---

[136] *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570.
[137] Compl. at ¶¶ 116-18.
[138] *Blum*, 2010 WL 629850, at *15 (quoting *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *15 (Del. Ch. Nov. 30, 2007)).

Entities, joint enterprise liability as to all Defendants, agency and respondeat superior as to all Defendants, and piercing the corporate veil as to The Perot Family Trust.  Plaintiffs' Amended Complaint must conform to applicable pleading requirements.  If Plaintiffs wish to pursue a mismanagement claim, their Amended Complaint must set forth with particularity their effort, if any, to secure initiation of the action by PCCM or the reasons for not making the effort.

      **SO ORDERED**.

      August 5, 2010.


**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**