**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE:  PARKCENTRAL GLOBAL LITIGATION | CIVIL ACTION NO. 3:09–CV–0765–M (LEAD CASE) |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Second Motion to Dismiss filed by The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), and Petrus Securities, L.P. (collectively "the Perot Entities") [Docket Entry #61] and the Second Motion to Dismiss filed by Steven L. Blasnik and Peter M. Karmin [Docket Entry #60].  For the reasons stated below, the Second Motion to Dismiss filed by the Perot Entities is **GRANTED**, and the Second Motion to Dismiss filed by Blasnik and Karmin is **GRANTED** in part and **DENIED** in part.

### I.    BACKGROUND

Plaintiffs are individuals and entities who invested as limited partners in Parkcentral Global, L.P. ("Parkcentral"), a hedge fund organized as a Delaware limited partnership that has not been sued in this case.  This suit arises out of the total loss of value of Plaintiffs' limited partnership interests.  Plaintiffs seek to hold responsible for that loss other entities that are not the primary actors, i.e., the Defendant Perot Entities, and Defendants Blasnik and Karmin, individuals employed by another non-defendant, Parkcentral's general partner, Parkcentral Capital Management, L.P. ("PCCM").[1]

---

[1] Defendants Blasnik and Karmin have roles at other non-defendant and defendant entities, including the Perot Entities, that Plaintiffs claim were involved with their investments.  *See In re Parkcentral Global Litig. (Parkcentral*

On August 5, 2010, the Court dismissed Plaintiffs' Consolidated Class Action Complaint (the "CAC"), but granted Plaintiffs leave to replead their claims for breach of fiduciary duty by non-disclosure (holder claims) as to all Defendants, aiding and abetting breaches of fiduciary duty as to the Perot Entities,[2] joint enterprise liability as to all Defendants, agency and respondeat superior as to all Defendants, and piercing the corporate veil as to The Perot Family Trust.  In addition, the Court noted that if Plaintiffs wished to pursue a mismanagement claim, their Amended Complaint must set forth with particularity their effort, if any, to secure initiation of the action by PCCM, or the reasons for not making such effort.[3]

On October 20, 2010, Plaintiffs filed their Second Amended Consolidated Complaint (the "SAC").  Because the crux of the SAC is the same as the CAC, the Court generally incorporates the facts as stated in *Parkcentral I*,[4] but notes that Perot Management G.P., L.L.C. and Perot G.P., Inc. are no longer named as Defendants in the SAC and that Plaintiffs have withdrawn certain claims and allegations.

In Count I of the SAC, Plaintiffs allege that Defendants Blasnik, Karmin, Perot Investments, and The Perot Family Trust breached their fiduciary duties by mismanagement.  In the alternative, Plaintiffs allege that Karmin aided and abetted Blasnik's breaches of fiduciary duty and that the Perot Entities aided and abetted the breaches of fiduciary duty by Blasnik and Karmin.  Plaintiffs further allege that Perot Investments is vicariously liable for the breaches of fiduciary duty by Blasnik and Karmin, and that Petrus is vicariously liable for Blasnik's breaches of fiduciary duty.

---

*I*), No. 3:09-CV-0765-M, 2010 WL 3119403, at *1–2 (N.D. Tex. Aug. 5, 2010); Second Am. Consolidated Compl. (the "SAC") ¶¶ 12–13.

[2] As defined in the Court's August 5, 2010 Memorandum Order and Opinion, the Perot Entities were The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), Perot Management G.P., L.L.C., Perot G.P., Inc., and Petrus Securities, L.P.  *See Parkcentral* I, 2010 WL 3119403, at *1.

[3] *Id.* at *13.

[4] *Id.* at *1–3.

In Count II of the SAC, Plaintiffs allege that Defendants Blasnik, Karmin, Perot Investments, and The Perot Family Trust breached their fiduciary duties by misrepresentation and non-disclosure.  In the alternative, Plaintiffs allege that Karmin aided and abetted Blasnik's breaches of fiduciary duty and that the Perot Entities aided and abetted the breaches of fiduciary duty by Blasnik and Karmin.  Plaintiffs further allege that Perot Investments is vicariously liable for the breaches of fiduciary duty by Blasnik and Karmin, and that Petrus is vicariously liable for Blasnik's breaches of fiduciary duty.

Count III seeks damages and equitable remedies as to all Defendants.  Count IV seeks exemplary damages as to all Defendants.  In Count V, Plaintiffs "bring Count II as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a proposed class consisting of all persons or entities who invested capital in Parkcentral limited partnership interests at any time before November 2008 and held capital and/or earnings (or any portion thereof) on or after July 1, 2007, and thereby suffered losses."[5]

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[6]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[7]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[8]  Where the facts do not permit the court to

---

[5] SAC ¶ 177.
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).
[7] *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[8] *Twombly*, 550 U.S. at 570.

infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[9]

Because Plaintiffs' claims sound in fraud, Fed. R. Civ. P. 9(b) pleading standards apply.[10] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Rule 9(b) requirements are strict, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[11] At a minimum, the "who, what, when, where, and how" of the fraud must be laid out.[12] Rule 9(b) requirements must be met as to each defendant.[13] It is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another.[14] Allegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and "plaintiffs must set forth *specific facts* supporting an inference of fraud."[15]

Although Blasnik and Karmin were employed by several Perot Entities, it is well established that "directors and officers holding positions with a parent and its subsidiary can and

---

[9] Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678–79. There is no dispute that the Court may consider the Private Placement Memorandum ("PPM"), Subscription Agreement, Limited Partnership Agreement ("LPA"), and reports to Parkcentral's limited partners, which are attached to the Motions to Dismiss, referred to in the Complaint, and central to Plaintiffs' claims. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[10] *See Litson-Gruenber v. JPMorgan Chase & Co.*, No. 7:09-CV-056-O, 2009 WL 4884426, at *4–5 (N.D. Tex. Dec. 16, 2009) (applying Rule 9(b) to a breach of fiduciary duty claim); SAC ¶ 172 ("Plaintiffs seek exemplary damages for the fraud . . . of defendants as described above.").

[11] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

[12] *WMX Techs., Inc.*, 112 F.3d at 178.

[13] *See Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Senior Living Props., LLC v. Admiral Ins. Co.*, No. 3:03-CV-1634-G, 2003 WL 22995195, at *1 (N.D. Tex. Oct. 17, 2003).

[14] *See Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001).

[15] *Litson-Gruenber*, 2009 WL 4884426, at *4 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)) (emphasis in original).

do 'change hats' to represent the two corporations separately, despite their common ownership."[16]

## III.    ANALYSIS

### A.    Choice of Law

For the reasons stated in *Parkcentral I*, Delaware law applies to the evaluation of the claims against Blasnik, Karmin, and Perot Investments, and Texas law applies to the evaluation of the claims against the Texas entities, The Perot Family Trust and Petrus.

### B.    Mismanagement Claims

Plaintiffs assert that the Defendants breached their fiduciary duties to Parkcentral and its limited partners by mismanaging Parkcentral's assets and the Foreign Fund, and/or aided and abetted such breaches.

#### 1.  Demand Futility

As stated in *Parkcentral I*, Delaware courts have found mismanagement to be a derivative claim under *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), and, therefore, the limited partners must either have made a demand on the general partner, PCCM, or have alleged in the Complaint why such a demand was not made.[17]  The Court previously dismissed the derivative claims asserted in the CAC, because Plaintiffs did not plead facts demonstrating that demand had been made on PCCM or the reasons for not making such a demand.[18]

---

[16] *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997).

[17] *See* DEL. CODE ANN. tit. 6, § 17-1001 (1998) ("A limited partner or an assignee of a partnership interest may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed."); DEL. CODE ANN. tit. 6, § 17-1003 (1998) ("In a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort.").

[18] *Parkcentral I*, 2010 WL 3119403, at *5.

In the SAC, Plaintiffs attempt to cure this deficiency, by asserting that demand on PCCM would have been futile.  Under Delaware law, futility exists when a person or entity to whom or which demand would have been made is deemed incapable of making an impartial decision regarding the pursuit of the litigation.[19]  Plaintiffs allege in the SAC that those on whom they would make demand were Blasnik, as president and sole manager of PCCM, and The Perot Family Trust, as owner of PCCM, and that both participated in, and approved, the alleged wrongdoing and were thus incapable of making an impartial decision about filing suit against the Defendants.  Specifically, Plaintiffs allege that Blasnik mismanaged Parkcentral's assets by engaging in a trading strategy that was contrary to stated policies and internal risk management controls,[20] and that The Perot Family Trust provided and/or assented to the investment advice that resulted in the trading strategy that was contrary to stated policies and internal risk management controls.[21]  The Court finds that by such allegations, Plaintiffs have adequately pleaded demand futility, which excuses their failure to make demand.

In their Motions, Defendants do not dispute that Plaintiffs have pleaded that demand on PCCM would have been futile; rather, Defendants assert that (1) Plaintiffs lack standing to assert derivative claims on behalf of Parkcentral, because the challenged conduct took place at the Parkcentral Global Hub, Limited (the "Foreign Fund") level, not at the Parkcentral level, and Plaintiffs are not shareholders of the Foreign Fund, and (2) any claims for mismanagement at the Foreign Fund are now under the control of the Joint Liquidators appointed by the Bermuda courts to oversee liquidation of the Foreign Fund, so Plaintiffs would have had to make demand on the Joint Liquidators.  As the case proceeds, evidence may develop that the challenged

---

[19] *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 102 (1991) (citations omitted) (stating "demand typically is deemed to be futile when a majority of the directors have participated in or approved the alleged wrongdoing, or are otherwise interested in the challenged transactions.").
[20] SAC ¶ 129.
[21] SAC ¶ 142.

conduct did not take place at the Parkcentral level, and thus that Plaintiffs' claims do not reside there, but at this stage of the litigation, based on the facts alleged in the SAC, the Court concludes the claims are derivative claims of Parkcentral, as to which demand is futile.

2.      Fiduciary Duty of Perot Investments

Plaintiffs allege that Perot Investments breached its fiduciary duties to Parkcentral by mismanaging the assets of Parkcentral, benefitting itself at the expense of Parkcentral and its limited partners. Perot Investments contends that Plaintiffs fail adequately to allege that it owed any fiduciary duty to Parkcentral or its limited partners.

To pursue a breach of fiduciary duty claim against Perot Investments under Delaware law, Plaintiffs must allege specific facts that lead to a reasonable inference that Perot Investments exercised control over Parkcentral in connection with the alleged mismanagement, to benefit itself at Parkcentral's expense.[22]  The Court previously found Plaintiffs' allegations that Perot Investments provides "management services" to PCCM to be insufficient to demonstrate control over Parkcentral,[23] and to the extent Plaintiffs again rely on the rendering of such services, the SAC is similarly deficient. To attempt to cure that deficiency, Plaintiffs now allege that Parkcentral's marketing materials, private placement memoranda and due diligence questionnaires, which were reviewed and approved by Perot Investments, demonstrate that Perot Investments controlled Parkcentral. The SAC observes that the marketing presentations noted Parkcentral was "[f]ounded by Perot Investments, Inc.,"[24] but this fact does not support a reasonable inference that Perot Investments exercised control over Parkcentral. Plaintiffs also quote documents allegedly establishing that Perot Investments acted as an advisor to Parkcentral,

---

[22] *Parkcentral I*, 2010 WL 3119403, at *7 (analyzing *In re USACafes, L.P. Litigation*, 600 A.2d 43 (Del. Ch. 1991) and its progeny).
[23] *Id.* (noting that the PPM states that Perot Investments manages and supports the Foreign Fund's trading strategies, and allows use of Perot Investments' proprietary analytics and portfolio systems).
[24] SAC ¶ 25.

and that Parkcentral and Perot Investments are part of a fully integrated investment operation;[25] however, the quoted documents actually refer to the relationship between Perot Investments and PCCM, not Parkcentral.[26]  Nevertheless, Plaintiffs claim that these documents, even if they pertain to the relationship between Perot Investments and PCCM, further support their allegation that Perot Investments and PCCM operated as a single unit managing Parkcentral's assets. However, the fact that Perot Investments and PCCM had overlapping management teams, or even that they were fully integrated, does not give rise to an inference that Perot Investments exercised control over Parkcentral.[27]  Further, Parkcentral's display of historical performance statistics for Perot Investments and providing to the Parkcentral investors returns of Perot Investments similarly does not give rise to any such inference.  PCCM admittedly intended to use investment strategies for Parkcentral that had previously been used by Perot Investments on behalf of Petrus, so those historical results were provided to Parkcentral investors.

To the extent Plaintiffs claim that Perot Investments exercised control over Parkcentral through H. Ross Perot, Sr. ("Mr. Perot"), that claim fails because Plaintiffs have pleaded no facts showing that Mr. Perot acted as an agent for Perot Investments or in furtherance of any agency relationship to support the conclusion that Perot Investments controlled Parkcentral through Mr. Perot.[28]  Plaintiffs allege that Mr. Perot wholly owned and controlled Perot Investments[29] and

---

[25] SAC ¶¶ 28, 32.

[26] *Compare* SAC ¶ 28, *with* Defs.' J.A. 537 (The SAC pleads that the marketing presentations state Parkcentral is an affiliate of Perot Investments and that Parkcentral and Perot Investments, Inc. are a fully integrated operation, but the actual language from the presentation states that "Parkcentral Capital Management [i.e., PCCM] is an affiliate of Perot Investments;" the "We are a fully integrated investment operation" language makes no reference to Parkcentral); *compare* SAC ¶ 32, *with* Defs.' J.A. 383 (The SAC alleges that investor-relations packets and due diligence questionnaires state that Perot Investments, Inc. is a non-registered advisor to Parkcentral, but the actual language from the relevant document states that "Perot Investments, Inc. is a non-registered advisor to Parkcentral Capital Management, L.P. [i.e., PCCM]," not Parkcentral).

[27] *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997) (stating that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately.").

[28] In the CAC, Plaintiffs asserted that Mr. Perot acted in his capacity as "an agent, representative and/or controlling stakeholder in defendants The Perot Family Trust, Perot Investments, Perot Management, Perot G.P. and Petrus."  In *Parkcentral I*, the Court held that "[i]f Plaintiffs assert that [Mr. Perot] aided and abetted the breaches of fiduciary

that investors were told about "Mr. Perot's role in reviewing, overseeing, and approving Blasnik's work, investments, strategies, risk management, leverage, and investor reporting."[30] However, Mr. Perot's ownership of Perot Investments does not provide a well-pleaded basis to infer that Perot Investments took actions through Mr. Perot.[31]   Further, Plaintiffs do not allege that Mr. Perot was acting on behalf of Perot Investments when he allegedly reviewed, oversaw, and approved Parkcentral's investment strategies and decisions.

Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to support a reasonable inference that Perot Investments exercised control, directly or through Mr. Perot, over Parkcentral in connection with the alleged mismanagement.   Therefore, Perot Investments cannot be held liable for a breach of fiduciary duty.

### 3.      Fiduciary Duty of The Perot Family Trust

Plaintiffs allege that The Perot Family Trust breached its fiduciary duties to Parkcentral by mismanaging the assets of Parkcentral.   The Perot Family Trust urges that Plaintiffs did not adequately allege it owed any fiduciary duty to Parkcentral or its limited partners.

While not as well-developed as Delaware law, Texas law, which applies to the claims against The Perot Family Trust, also focuses on the *exercise* of control, rather than mere ownership or ability to control, in assessing whether affiliates of a general partner owe fiduciary

---

duty as a representative of any Perot Entity, they must specifically plead his relationship with each Perot Entity and how his alleged control over the Foreign Fund was in furtherance of such relationship."  2010 WL 3119403, at *9.

[28] *Id.* at *1–3.

[29] SAC ¶¶ 20, 43.

[30] SAC ¶¶ 43–44.

[31] *See* 1 William Meade Fletcher, Fletcher Cyclopedia Of The Law Of Corporations § 30 ("Generally, a shareholder is not an agent or representative of the corporation unless expressly or impliedly authorized as such, nor is the sole or controlling shareholder such except under circumstances that permit the corporate entity to be disregarded."); 18 Corpus Juris Secundum §404 (2007) ("Generally, in the absence of statutory authority . . . stockholders cannot act for the corporation . . . [t]heir status as stockholder does not make them agents of the corporation"); *See* Wayne A. Hagendorf, The Complete Guide To Limited Liability Companies at 12-4 ("where managers manage the LLC, members will not be agents of the LLC and have no authority to bind the LLC").

duties.[32]  "In a two-tiered corporate structure, 'the issue of control has always been the critical fact looked to by the courts in imposing [fiduciary responsibilities].'"[33]  Relying on *Harwood*, Defendants contend that because The Perot Family Trust does not have any day-to-day responsibilities over the operations of Parkcentral, The Perot Family Trust does not control Parkcentral.  While Plaintiffs agree that day-to-day responsibilities are sufficient to show control, they argue that such a showing is not required by Texas law.  Plaintiffs assert that The Perot Family Trust's ownership of PCCM, statements made in a securities filing by Perot Systems Corporation, and statements in Parkcentral's PPM all demonstrate control by The Perot Family Trust.

Although Plaintiffs allege that The Perot Family Trust owns PCCM, ownership alone is insufficient to demonstrate control.  The statements made in the above-referenced securities filing and in the PPM are similarly insufficient to show control.[34]  To the extent that the securities filing states that PCCM is "an investment firm controlled by The Perot Family Trust,"[35] this does not give rise to the inference that The Perot Family Trust exercised control over Parkcentral in connection with the alleged mismanagement.  Plaintiffs allege that because the PPM states that "[t]he trustees of the Perot Family Trust are also registered with the [National Futures Association] as principals of PCCM,"[36] the Perot Family Trust controls Parkcentral.  However, the PPM states that the Perot Family Trust has "no-day-to-day responsibility in connection with the operations" of PCCM or PCCM's general partner.[37]  While day-to-day

---

[32] *See In the Matter of Archie Bennett, Jr. (In re Bennett)*, 989 F.2d 779, 789 (5th Cir. 1993) (summarizing Texas cases to demonstrate that the exercise of control or management is vital to the court's analysis as to whether fiduciary duties are owed).
[33] *In re Davis S. Harwood*, 427 B.R. 392, 397 (E.D. Tex. 2010) (citing *In re Bennett*).
[34] *See In re Bennett*, 989 F.2d at 789; *see also In re Harwood*, 427 B.R. 392 at 397 (describing day-to-day responsibilities as evidence of control).
[35] SAC ¶ 36.
[36] *Id.*
[37] Defs.' J.A. 353.

responsibilities may not be required, something more than what Plaintiffs have pleaded is required to establish that The Perot Family Trust *exercised* control over Parkcentral.[38]

To the extent Plaintiffs claim that The Perot Family Trust exercised control over Parkcentral through Mr. Perot, that claim is similarly insufficient.  Plaintiffs allege that The Perot Family Trust was formed to benefit Mr. Perot and his family financially, and was funded by assets of Mr. Perot and/or entities he owned or controlled,[39] and that investors were told that Mr. Perot monitored, oversaw, and approved the trading strategies and risk management taking place at Parkcentral.[40]  As was the case for Perot Investments, Plaintiffs have not pleaded sufficient facts to show that Mr. Perot acted on behalf of The Perot Family Trust.

Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to support a reasonable inference that The Perot Family Trust exercised control over Parkcentral, directly or through Mr. Perot, in connection with the alleged mismanagement.  Therefore, The Perot Family Trust cannot be held liable for a breach of fiduciary duty.

3.     Fiduciary Duty of Blasnik and Karmin

Under *USACafes* and its progeny, Blasnik and Karmin, by virtue of their positions with PCCM, have a fiduciary duty not to act to benefit themselves at Parkcentral's expense.[41] Plaintiffs allege that Blasnik and Karmin mismanaged Parkcentral's assets and the Foreign Fund, by implementing a CMBS credit arbitrage strategy that was directly contrary to the Foreign Fund's stated policies and risk management controls.  According to the SAC, Blasnik and Karmin engaged in this "risky" trading strategy to generate "far more in fees for [themselves]

---

[38] *See Bennett*, 989 F.2d at 789–90.
[39] SAC ¶ 39.
[40] SAC  ¶¶  43–44.
[41] *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *1, 9–10 (Del. Ch. Apr. 20, 2009) (denying a motion to dismiss a breach of fiduciary duty claim against an individual who was neither a member or officer of a limited liability company, but exercised control over that company for his personal benefit); *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*, No. 16630-NC, 2001 WL 1641239, at *8–9 (Del. Ch. Dec. 4, 2001).

than would have been generated if the [Foreign Fund] had been managed in accordance with the stated policies and internal management controls."[42]

Other allegations in the SAC, however, belie these general allegations about Blasnik and Karmin's alleged purpose for engaging in a high-risk trading strategy. The SAC states that PCCM received annual management fees equaling 1.5% of funds under management and incentive fees equaling 20% of the Foreign Fund's annual profits.[43] The SAC further states that "Blasnik and Karmin received a percentage of the [Foreign Fund's] assets under management and/or profits."[44] The SAC then argues that "if investors began to withdraw their capital in the [Foreign Fund], Blasnik [and] Karmin . . . stood to lose a significant portion (or even all) of their compensation."[45]

That the fees received by Blasnik and Karmin correlated to the size of funds under management, and to profits on the Foreign Fund's investments, does not provide a plausible basis to infer that the alleged *mismanagement* enriched Blasnik and Karmin *at the expense of Parkcentral*. Plaintiffs' mismanagement claim is based on the alleged risky trading strategy pursued by Blasnik and Karmin. However, a fee tied to the amount of funds under management is not affected by the risk of the positions in which those funds are invested. For example, 1.5% of $500 million does not change based on whether that $500 million is in low-risk treasury bonds or in high-risk CMBS. Thus, to the extent Blasnik's and Karmin's compensation was tied to the amount of funds under management, investing those funds in unduly risky positions does not create a benefit for PCCM, Blasnik, or Karmin at the expense of Parkcentral.

---

[42] SAC ¶¶ 129–30, 132–33.
[43] SAC ¶ 107.
[44] *Id.*
[45] *Id.*

The alleged relationship between the Foreign Fund's profits and Blasnik's and Karmin's compensation also does not demonstrate that they benefited from the alleged mismanagement at the expense of Parkcentral.  Admittedly, if ultimately successful, riskier investments could conceivably yield greater profits than less risky ones, and thus benefit Blasnik and Karmin.  However, this potential benefit is not one that Blasnik and Karmin would receive at the expense of Parkcentral, because Parkcentral would also accrue increased profits.  Likewise, if riskier investments proved unsuccessful, as they ultimately did in this case, Blasnik and Karmin would share in the downside, because losses would reduce the funds under management and, in turn, the portion of Blasnik's and Karmin's compensation tied thereto.

Accordingly, the Court finds that Plaintiffs have not alleged sufficient facts to support a reasonable inference that Blasnik or Karmin exercised control over Parkcentral to benefit themselves at Parkcentral's expense.  Therefore, Blasnik and Karmin cannot be held liable for a breach of fiduciary duty claim, alleging mismanagement.

4.      Aiding and Abetting or Vicarious Liability

Plaintiffs alternatively allege that (1) Karmin aided and abetted Blasnik's breach of fiduciary duty by mismanagement, (2) Perot Investments aided and abetted breaches of fiduciary duty by Blasnik and Karmin and is vicariously liable for their breaches, (3) The Perot Family Trust aided and abetted breaches of fiduciary duty by Blasnik and Karmin, and (4) Petrus aided and abetted breaches of fiduciary duty by Blasnik and Karmin and is vicariously liable for Blasnik's breaches.  Because Plaintiffs fail to state a claim for breach of fiduciary duty by mismanagement against Perot Investments, The Perot Family Trust, Blasnik, or Karmin, Plaintiffs' claims for secondary liability based on mismanagement also fail.

C.      Misrepresentation Claims

Plaintiffs assert, on behalf of Parkcentral, that the Defendants breached their fiduciary duties through misrepresentations and non-disclosures and/or aided and abetted such breaches. Specifically, Plaintiffs claim they held their investments in Parkcentral as a result of omissions and misrepresentations made by Defendants in periodic reports, until Parkcentral collapsed.  As recognized by this Court in *Parkcentral I*, Delaware law allows so-called holder claims—claims where the plaintiff alleges that the defendant wrongfully induced, through misrepresentations and non-disclosure, the plaintiff to continue holding stock—to be asserted directly.[46]

1.      Fiduciary Duties of Perot Investments

Plaintiffs allege that Perot Investments breached its fiduciary duties to Plaintiffs and members of the proposed class by misrepresenting and concealing the Foreign Fund's trading positions, benefitting itself at the expense of Parkcentral and its limited partners.  Perot Investments contends that Plaintiffs fail adequately to allege that it owed any fiduciary duty to Parkcentral or its limited partners.

As with the mismanagement claim, to pursue their misrepresentation claims against Perot Investments, Plaintiffs must have alleged specific facts that lead to a reasonable inference that Perot Investments exercised control over Parkcentral in connection with the alleged non-disclosures and misrepresentations, to benefit itself at Plaintiffs' expense.[47]

For the reasons identified in Section III.B.2 above, Plaintiffs have not done so, and thus, Perot Investments cannot be held liable for a breach of fiduciary duty.

---

[46] 2010 WL 3119403, at *5–6.
[47] *Parkcentral I*, 2010 WL 3119403, at *7.

2.      Fiduciary Duties of The Perot Family Trust

Plaintiffs allege that The Perot Family Trust breached its fiduciary duties to Plaintiffs and members of the proposed class by misrepresenting and concealing the Foreign Fund's trading positions.  The Perot Family Trust contends that Plaintiffs failed adequately to allege that it owed any fiduciary duty to Parkcentral or its limited partners.

As with the mismanagement claim, to pursue their misrepresentation claims against The Perot Family Trust, Plaintiffs must have alleged specific facts to demonstrate it exercised control over Parkcentral in connection with the alleged non-disclosures and misrepresentations.[48]

For the reasons identified in Section III.B.3 above,[49] Plaintiffs have not done so, and thus, The Perot Family Trust cannot be held liable for a breach of fiduciary duty by alleged misrepresentations and non-disclosures.

3.      Fiduciary Duties of Blasnik and Karmin

In *Parkcentral I*, the Court dismissed the misrepresentation/non-disclosure claims against Blasnik and Karmin, giving Plaintiffs an opportunity to replead, to state more than a "sheer possibility" that Blasnik and Karmin exercised control over Parkcentral to benefit themselves at Parkcentral's expense.[50]  When a plaintiff alleges a breach of fiduciary duty based on misrepresentation of a corporation's financial condition, where the alleged misrepresentation was not made in connection with a request for shareholder action, the following elements must be met: (1) deliberate misinformation either directly to the shareholders, or through public statements, i.e., statements made to the market; (2) reliance; (3) causation; and (4) actual,

---

[48] *See* Section III.B.3, *supra*.
[49] Plaintiffs allege that Mr. Perot reviewed, approved, and controlled all reporting made to Parkcentral's investors. *See* SAC ¶ 164.  To the extent Plaintiffs assert that The Perot Family Trust controlled Parkcentral through Mr. Perot, these allegations fail for the same reasons Plaintiffs' allegations regarding Mr. Perot's review and approval of trading strategies and risk management controls failed in connection with alleged mismanagement.
[50] *Parkcentral I*, 2010 WL 3119403, at *12.

quantifiable damages.[51]  Because the misrepresentation/non-disclosure claims sound in fraud,

they must also meet the heightened pleading requirements of Rule 9(b).[52]

The SAC alleges that Blasnik and Karmin issued periodic monthly and quarterly reports

and other communications falsely stating that the Foreign Fund was following its risk

management controls and trading strategies, and concealing the actual size, type, risk and

leverage of the trading positions in the Foreign Fund.[53]  Plaintiffs allege that they relied on the

misrepresentations and were induced to hold their investments, instead of withdrawing them.[54]

The SAC states that "Blasnik and Karmin received a percentage of the Foreign Fund's assets

under management and/or profits, and thus that their compensation was tied to and dependent

upon the fees paid by the Foreign Fund's investors."[55]  Plaintiffs therefore allege that if investors

began to withdraw their capital in Parkcentral, Blasnik and Karmin stood to lose a significant

portion (or even all) of their compensation.[56]  The SAC provides tables that purport to

demonstrate the estimated undisclosed losses resulting from Blasnik and Karmin's risky trading

strategy and how the undisclosed losses inflated the annual incentive and management fees.[57]

Blasnik and Karmin contend that Plaintiffs have not explained how those fees were calculated,

and therefore, the allegations amount to nothing more than unadorned accusations devoid of

factual support.  Actually, Plaintiffs explain how they arrived at the figures in the SAC,[58] and at

this stage of the case, the Court must accept Plaintiffs' factual allegations as true.  Blasnik and

---

[51] *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 389 (5th Cir. 2009) (citing *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998)).
[52] *See* Section II, *supra*.
[53] SAC ¶¶ 150, 153.
[54] SAC ¶¶ 150, 153.
[55] SAC ¶ 107.
[56] SAC ¶ 107.
[57] SAC ¶¶ 111-12.
[58] *See* SAC nn. 7–9.

Karmin raise a factual dispute as to the information in the tables that cannot be determined at this stage.

Blasnik and Karmin further contend that Plaintiffs fail to plead actual, justifiable reliance by Plaintiffs. Blasnik and Karmin argue that in the Subscription Agreement, Plaintiffs expressly disclaimed reliance on representations made outside the PPM, and that they therefore cannot rely on the Due Diligence Questionnaires, or any other materials that predate the Subscription Agreements. However, Plaintiffs base their allegations on the periodic reports that were sent to investors, after Plaintiffs executed their Subscription Agreements.[59] Blasnik and Karmin agree that Plaintiffs have the right to rely on such reports, but note that the SAC lacks any allegations that Plaintiffs actually relied on or read any specific report. Actually, Plaintiffs describe in detail alleged misrepresentations in the periodic reports they received, and allege that as a result, they held onto their investments, which they would have withdrawn had they known the truth.[60] The Court finds that the facts as alleged support the inference that Plaintiffs relied on those reports when deciding to hold onto their investments. To the extent Blasnik and Karmin assert that the disclaimer cited above overcomes any alleged link between the reports the Plaintiffs received after they invested and the materials they received before they invested, Blasnik and Karmin misapprehend Plaintiffs' allegations. Plaintiffs do not claim the risk and leverage reported in 2007-08 did not match the Due Diligence Questionnaires; instead, they allege that the risk and leverage reported by Blasnik and Karmin to investors in 2007-08 did not match the risk and leverage actually undertaken by Parkcentral and the Foreign Fund in 2007-08.

Blasnik and Karmin rely on *Manzo v. Rite Aid*, No. 19451-NC, 2002 WL 31926606 (Del Ch. Dec. 19, 2012), *aff'd*, 825 A.2d 239 (Del. 2003) in support of their position that Plaintiffs

---

[59] SAC ¶¶ 55–91.
[60] SAC ¶¶ 55–91.

have not sufficiently pleaded allegations of justifiable reliance.  The *Manzo* court determined that

the plaintiff had made only conclusory allegations as to reliance and had failed to plead facts to

support an inference that the plaintiff relied on the alleged misrepresentations.[61]  The court

concluded that only one factual statement in plaintiff's amended complaint—the fact that

plaintiff decided to hold her stock continuously for some thirty years—was relevant to its

evaluation of whether plaintiff relied on defendants' misrepresentations when she decided to

hold her stock.  The court found that plaintiff's decision to hold her stock continuously for thirty

years undercut, "to some extent, any later assertions [made by plaintiff] that between March 1,

1997 and October 18, 1999, that decision was based on the inaccurately positive picture

presented in the company's financial disclosures."[62]  The court went on to find that while

plaintiff may have relied on defendants' misrepresentations, she failed to allege any facts to

support such an inference.  The pleading deficiency identified in *Manzo* is not present here.  The

Court finds Plaintiffs have sufficiently pleaded reliance.

Blasnik and Karmin further contend that Plaintiffs have failed to plead an actual,

quantifiable injury, relying in part on *Manzo* to assert that Plaintiffs must meet a heightened

pleading requirement.  In fact, *Manzo* does not impose such a requirement.  There, the court

found plaintiff's damages theory for "investments opportunity losses" to be unsupported by any

precedent or policy, and that such a theory presupposed reliance, which plaintiff had not

adequately pled.[63]  Further, the court found plaintiff's theory of entitlement to "benefit of the

bargain damages" failed, because it did not state a cognizable injury, where plaintiff failed to

---

[61] *Manzo*, 2002 WL 31926606, at *4 (labeling as conclusory the allegations that plaintiff's injuries resulted from the defendants' wrongful conduct and that plaintiff and class members received and relied on the company's communications).
[62] *Id.*
[63] *Id.* at 5.

articulate any specific bargain from which the benefits purportedly flowed.[64]  The SAC states

that Plaintiffs seek damages measured by the difference between the value their investments

would have had without the defendants' misrepresentations, and the value their investments

actually had as a result of the defendants' alleged misrepresentations.[65]  The Court finds that by

such allegations, Plaintiffs have sufficiently pleaded damages.

Blasnik and Karmin further contend that Article VI of the Limited Partnership Agreement

only permits withdrawals at the end of a calendar quarter and only after 45 days' written notice

to PCCM and, in some circumstances, limits the percentage of redemptions.  Blasnik and Karmin

argue that the SAC ignores these contractual terms and fails to provide any allegation of when

each plaintiff decided or would have decided to seek to redeem capital.  However, whether

Plaintiffs' damages should be reduced by virtue of these contractual limits is an issue to be

decided at a later stage of the case, and the level of specificity of damages is sufficient at this

stage.

Finally, Blasnik and Karmin contend that Plaintiffs have not met the heightened pleading

requirements of Rule 9(b), arguing that the SAC fails to segregate the wrongdoing of one

Defendant from another, and contend that Plaintiffs  merely substitute (in the SAC) the words

"Defendants" or "Blasnik and Karmin" in the CAC with "Perot Investments, Blasnik and

Karmin."[66]  However, in the Court's view, the SAC, by specifically stating which Defendants

engaged in certain alleged wrongful acts, sufficiently segregates the claimed wrongdoing of one

---

[64] *Id.*
[65] SAC ¶ 168.
[66] Blasnik and Karmin Mot. to Dismiss 24.

Defendant from the other, and it contains sufficient specific facts to support an inference of fraud.[67]

The Court finds that Plaintiffs have sufficiently alleged facts to state a plausible claim for misrepresentation/non-disclosure by Blasnik and Karmin.

### 4.    Aiding and Abetting

Plaintiffs alternatively allege that (1) Karmin aided and abetted Blasnik's breach of fiduciary duty by misrepresentation/non-disclosure, (2) Perot Investments aided and abetted Blasnik and Karmin's breaches of fiduciary duty by misrepresentation/non-disclosure, (3) The Perot Family Trust aided and abetted Blasnik and Karmin's breaches of fiduciary duty by misrepresentation/non-disclosure, and (4) Petrus aided and abetted Blasnik and Karmin's breaches of fiduciary duty by misrepresentation/non-disclosure.  The Perot Entities contend that the SAC does not allege facts from which the Court could reasonably infer that Mr. Perot was acting on their behalves, nor does it identify anyone else who purportedly aided and abetted Blasnik and Karmin on behalf of Perot Investments.  Karmin contends that the allegations in the SAC are "nothing more than bare-bones recitations of the legal elements" for aiding and abetting, and that the SAC fails to allege particular facts as to how specific acts taken by Karmin, distinct and apart from Blasnik, could be tortious in nature or have been a factor in any acts taken by Blasnik.

### (a)    Perot Entities

Under Texas and Delaware law, to pursue a claim for aiding and abetting a breach of fiduciary duty, Plaintiffs must show that the Perot Entities knowingly participated in such a

---

[67] In *Parkcentral I*, the Court found that Plaintiffs sufficiently pled Blasnik and Karmin's fraud and gross negligence in connection with their preparation of periodic reports, to defeat Blasnik and Karmin's entitlement to exculpation under the exculpatory clause of the LPA for breach of fiduciary duties.  2010 WL 3119403, at *12.

breach.[68]  In *Parkcentral I*, the Court dismissed the aiding and abetting claims, without prejudice, holding that the CAC did not "allege facts sufficient to support an inference that any Perot Entities knowingly participated in Blasnik and Karmin's breaches of fiduciary duty," and further held that if the "Plaintiffs asserted that [Mr. Perot] aided and abetted the breaches of fiduciary duty as a representative of any Perot Entity, they must specifically plead his relationship with each Perot Entity and how his alleged control over the Foreign Fund was in furtherance of such relationship."[69] In the SAC, Plaintiffs assert that the Perot Entities knowingly participated in Blasnik and Karmin's misrepresentations and non-disclosures by virtue of acts taken by Mr. Perot.  The Court has already found that actions taken by Mr. Perot are not automatically attributable to Perot Investments and the Perot Family Trust, and Plaintiffs do not allege sufficient facts to infer that those entities knowingly participated in Blasnik's and Karmin's breaches of fiduciary duty.  The SAC also does not identify anyone else who purportedly aided and abetted Blasnik and Karmin on behalf of Perot Investments.  As to Petrus, Plaintiffs allege that Mr. Perot is the founder and owner of Petrus[70] and that Perot controls Petrus through Perot Investments, a general partner of Petrus,[71] but for the reasons stated in Sections III.B.2 and III.B.3, this pleading is insufficient to support an inference that Mr. Perot was acting as a representative of Petrus.  Allegations that Mr. Perot reviewed and approved Blasnik's reports to investors do not constitute specific facts sufficient to demonstrate that Perot acted as a representative of Petrus when he allegedly reviewed and approved those reports.

---

[68] *Parkcentral I*, 2010 WL 3119403, at *9.
[69] *Id.*
[70] SAC ¶ 115.
[71] *Id.* at ¶ 40.

(b)    Karmin

Plaintiffs allege that Karmin aided and abetted Blasnik's breaches of fiduciary duty by misrepresentation/non-disclosure, as an alternative theory of liability.  To state a claim for aiding and abetting a breach of fiduciary duty under Delaware law, Plaintiffs must show:  "(1) the existence of a fiduciary relationship; (2) the fiduciary breached [his] duty; (3) a defendant, who is not a fiduciary, knowingly participated in the breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary."[72]  In Section III.C.3, the Court found that Plaintiffs have sufficiently stated a claim that Blasnik breached his fiduciary duty by misrepresentations/non-disclosures.  The Court finds Plaintiffs have sufficiently pled facts that lead to an inference that Karmin knowingly participated in Blasnik's breach of fiduciary duty by misrepresentation.  The SAC alleges that Karmin participated in the preparation and issuance of the periodic reports that Plaintiffs allege contained misrepresentations and omissions, and that he signed many of the reports and communications sent to investors.[73]  As stated in Section III.C.3, the SAC details the "inflated" fees charged to investors as a result of the allegedly false reports issued by Blasnik and Karmin.  Accordingly, the Court concludes that Plaintiffs may proceed on this alternative theory of liability as to Karmin.

5.    Vicarious Liability

Plaintiffs allege that Perot Investments is vicariously liable for the actions of Blasnik and Karmin, and Petrus is vicariously liable for the actions of Blasnik.  The SAC contains the same pleading deficiencies identified in *Parkcentral I*, i.e., the allegations are conclusory and lack specificity, so the claims for vicarious liability are dismissed.[74]

---

[72] *Parkcentral I*, 2010 WL 3119403, at *12.
[73] SAC ¶¶ 75, 153.
[74] In the CAC, Plaintiffs asserted that The Perot Family Trust, Petrus, Perot Investments, Perot G.P., and Perot Management were vicariously liable for the acts and/or omissions of their agents, employees, and/or representatives,

To be within the scope of employment, an employee's tortious act must be "[1] within the scope of the employee's general authority [2] in furtherance of the employer's business and [3] for the accomplishment of the object for which the employee was hired."[75]  Although the SAC states that Blasnik was the President and sole director of Perot Investments and the President and Director of both of the general partners of Petrus—Perot Investments and Perot G.P.,[76] and that Karmin was the Director of Trading at Perot Investments, the SAC, like the CAC, does not state sufficient facts to raise a reasonable inference that Blasnik and Karmin's breaches of fiduciary duty by misrepresentation/non-disclosure were within the scope of their employment by Perot Investments and/or Petrus.  The SAC states that in their roles at Perot Investments, Blasnik and Karmin "both were acting at all times in the scope of these responsibilities, in furtherance of Perot Investments' business, and for the accomplishment of what they were hired to do, when they engaged in the misconduct set forth [in the SAC]."[77]  The SAC further states that in his role with both of the general partners of Petrus, Blasnik "was acting at all times within the scope of these responsibilities, in furtherance of Petrus' business, and for the accomplishment of what he was hired to do, when he engaged in the misconduct set forth [in the SAC]"[78]  These conclusory allegations are insufficient to state a plausible claim that Perot Investments or Petrus are vicariously liable.  As the Court has recognized, employees "can and do 'change hats' to

including Blasnik and Karmin.  In *Parkcentral I*, the Court noted that the CAC did not allege that Blasnik and Karmin were employees of The Perot Family Trust or Petrus, and that Plaintiffs had not pled sufficient facts to raise a reasonable inference that Blasnik and Karmin's alleged breaches of fiduciary duty by misrepresentation/non-disclosure were within the scope of their employment by Perot Investments, Perot G.P. and/or Perot Management. 2010 WL 3119403, at *10.

[75] *Anderson v. United States*, 364 F. App'x. 920, 922 (5th Cir. 2010) (unpublished) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)); *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184-VCP, 2008 WL 4057745, at *11 (Del. Ch. Sept. 2, 2008) ("For the agency theory, the factual inquiry includes whether: '(1) the agent ha[s] the power to act on behalf of the principal with respect to third parties; (2) the agent do[es] something at the behest of the principal and for his benefit; and (3) the principal ha[s] the right to control the conduct of the agent.'").

[76] SAC ¶¶ 160, 166.  The Court notes that the SAC does not contain any allegation that Blasnik was an employee of Petrus.

[77] SAC ¶ 160.

[78] SAC ¶ 166.

represent two corporations separately."[79]  At most, the SAC alleges facts that raise a reasonable

inference that Blasnik and Karmin acted on behalf of PCCM when they reported to investors

about the Foreign Fund's trading positions.[80]  That is insufficient to conclude that Perot

Investments or Petrus are vicariously liable for the actions of Blasnik and/or Karmin.

      D.      Unjust Enrichment, Exemplary Damages, and Class Action Allegations

      Plaintiffs seek disgorgement of all management and incentive fees paid to Defendants

during their alleged acts of misconduct in order to prevent unjust enrichment, plus exemplary

damages, and they seek to pursue a class action.  Because the Court has dismissed the

mismanagement and misrepresentation claims against the Perot Entities, Plaintiffs are not

entitled to any such relief against the Perot Entities.

      Blasnik and Karmin assert that because the alleged wrongs arise from a relationship

governed by contract, Plaintiffs have an adequate remedy at law, and thus cannot pursue a claim

for unjust enrichment.  Plaintiffs assert that under Delaware law, a remedy based on unjust

enrichment is available in breach of fiduciary duty cases, and that they pleaded unjust

enrichment "as merely the predicate to the remedy of profit disgorgement."[81]  Unjust enrichment

is "the unjust retention of a benefit to the loss of another, or the retention of money or property of

another against the fundamental principles of justice or equity and good conscience."[82]  "The

elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation

between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence

---

[79] *See* Section II, *supra*.
[80] *See* Defs.' J.A. Exs. 5–6, 11–16, 20 (demonstrating that the periodic reports referenced in the SAC were issued by PCCM on PCCM letterhead).  The Court notes that the November 3, 2008 periodic report, Defs.' J.A. Ex. 17, is not on PCCM letterhead, but that it otherwise conforms to the form and structure of those periodic reports that are on PCCM letterhead.
[81] Pls.'s Resp. 49.
[82] *Nemec v. Shrader et al.*, 991 A.2d 1120, 1130 (Del. 2010) (citing *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

of a remedy provided by law."[83]   When considering a claim for unjust enrichment, the threshold

inquiry a court must make is whether "a contract already governs the relevant relationship

between the parties."[84]   When a contract governs the relationship between parties, a party

typically cannot recover under a theory of unjust enrichment.[85]

Here, the LPA governs the relationship between PCCM and the Plaintiffs.[86]   Blasnik is

the President and sole manager of PCCM, while Karmin is the Head of Trading of PCCM.[87]   By

virtue of their roles at PCCM, the LPA governs the relationship between Blasnik and Karmin and

the Plaintiffs.   Under Delaware law, a limited partnership agreement, like the LPA, is considered

a "contract."[88]   Thus, the relationship between Blasnik and Karmin and the Plaintiffs is governed

by contract.   Nevertheless, because Plaintiffs bring a claim for breach of fiduciary duty, and to

the extent Blasnik and Karmin allegedly intentionally enriched themselves at the expense of

Parkcentral, the relationship between Blasnik and Karmin and Parckentral is such that an unjust

enrichment claim might later be proven viable.[89]   While the Court recognizes that the existence

of the LPA might complicate the applicability of the unjust enrichment doctrine, it cannot rule

out the possibility that the Plaintiffs could succeed on an unjust enrichment claim, where

evidence may prove that Defendants breached their fiduciary duties.[90]   The Court's review of the

---

[83] *Id.* (citing *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999)).

[84] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, C.A. No. 3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).

[85] *See ID Biomedical Corp. v. TM Tech., Inc.*, Civ. A. No. 13269, 1995 WL 130743, at *15 (Del.Ch. Mar.16, 1995); *see also Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) (stating that because a contract is the "measure of the Plaintiffs' right," an unjust enrichment claim will be dismissed); *Nemec v. Shrader*, Nos. 3878-CC, 3934-CC, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009) (stating that "Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract").

[86] *Parkcentral* I, 2010 WL 3119403, at *1–2.

[87] SAC ¶¶ 12, 16.

[88] *See In re K-Sea Transp. Partners L.P. Unitholders Litig.*, C.A. No. 6301–VCP, 2012 WL 1142351, at *5 (Del. Ch. Apr. 4, 2012).

[89] *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 671 (Del. Ch. 2006).

[90] *Id.* at 671 n.24.; *see also Cantor v. Perelman*, 414 F.3d 430, 435 (3d Cir. 2005) (applying Delaware law to conclude that where the record supported a finding that defendants exploited their fiduciary position for personal

case law where courts dismiss claims for unjust enrichment when a contract governs the parties' relationship leads it to conclude they do so where the contract alone provides the measure of the plaintiff's rights, and the plaintiff seeks to recover for a breach of that contract.[91]   Here, in contrast, Plaintiffs seek to recover for Blasnik's and Karmin's breaches of fiduciary duty, and accordingly, the Court concludes that Plaintiffs may proceed on their unjust enrichment claim.

The purpose of profit disgorgement is to deter future misconduct by requiring the defendant to disgorge any profits resulting from such wrongdoing.[92]   Delaware courts have ordered profit disgorgement as a remedy for duty of loyalty violations.[93]   Because Plaintiffs have sufficiently pleaded a claim for breach of fiduciary duty by misrepresentation/non-disclosure, Plaintiffs are entitled to seek disgorgement of all management and incentive fees paid to Blasnik and Karmin.

Blasnik and Karmin argue that the exemplary damages claim fails because Plaintiffs have failed to state a primary claim that could serve as a predicate for exemplary damages, but this argument fails in light of the Court's finding that Plaintiffs have sufficiently alleged misrepresentation/non-disclosure claims against Blasnik and Karmin.

---

gain, "[s]uch exploitation would constitute a breach of fiduciary duty and that breach would justify an unjust enrichment award").

[91] *See, e.g., BAE*, 2009 WL 264088, at *7; *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. Civ. A. 762-N, No. Civ. A. 763-N, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005) (dismissing unjust enrichment claim where contracts governed parties' relationship, and plaintiffs brought claims based on these contracts); *ID Biomedical Corp.*, 1995 WL 130743, at *15 (dismissing unjust enrichment claim and finding the case to be "essentially a contract case"); *see also Research Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999) (dismissing fiduciary duty claims, and applying Delaware law to dismiss unjust enrichment claim where plaintiff brought contract claim); *Nemec v. Shrader*, No. Civ. A. 3878, No. Civ. A. 3934, 2009 WL 1204346, at *4, 6 (Del. Ch. Apr. 30, 2009) (dismissing the fiduciary duty claim, and dismissing the unjust enrichment claim in the face of a valid and enforceable contract), *aff'd*, 991 A.2d 1120 (upholding lower court's dismissal of the unjust enrichment claim on other grounds, and declining to consider whether an unjust enrichment claim must be dismissed where contract governs the parties' relationship).

[92] *Pike v. Commodore Motel Corp.*, C.A. No. 940, 1986 WL 13007, at *3 (Del. Ch. Nov. 14, 1986).

[93] *See Triton Constr. Co. v. E. Shore Elec. Servs, Inc.*, No. 3290-VCP, 2009 WL 1387115, at *28 (Del. Ch. May 18, 2009) (disgorging from defendant, and awarding plaintiff, profits obtained by the defendant's breach of the duty of loyalty), *aff'd*, 988 A.2d 938 (Del. 2010).

The Perot Entities move to dismiss the class action allegations for failure to state a claim. Because the Court has dismissed Plaintiffs' claims against the Perot Entities, a class action may similarly not proceed as to the Perot Entities.

### IV.    CONCLUSION

For the reasons stated above, the Second Motion to Dismiss filed by The Perot Family Trust, Hill Air Company I, L.L.C. (d/b/a Perot Investments, Inc.), and Petrus Securities, L.P. (collectively "the Perot Entities") [Docket Entry #61] is **GRANTED**, and all claims asserted against the Perot Entities are dismissed with prejudice.  The Second Motion to Dismiss filed by Steven L. Blasnik and Peter M. Karmin [Docket Entry #60] is **GRANTED** in part and **DENIED** in part.  Plaintiffs' claims alleging Blasnik and Karmin breached their fiduciary duties by mismanagement, and aided and abetted each other in doing so, are dismissed with prejudice. Plaintiffs may proceed on their claims alleging Blasnik and Karmin breached their fiduciary duties by misrepresentation/non-disclosure, and that Karmin aided and abetted Blasnik's breach of fiduciary duty by misrepresentation/non-disclosure.  Further, Plaintiffs may proceed with their unjust enrichment claim and seek equitable remedy in the form of disgorgement of management and incentive fees and exemplary damages as to Blasnik and Karmin.  Because Plaintiffs have filed an Original Complaint, the CAC, an Amended Consolidated Class and Derivative Complaint, and the SAC, and thus have been given numerous opportunities to plead their claims properly, the Court will not grant Plaintiffs further leave to replead.

**SO ORDERED**.

July 26, 2012.

BARBARA M. G. LYNN
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**